## ZANG v. ADAMS, RECEIVER.

1. NOTICE—CORPORATIONS.

A corporation is not affected with notice of facts within the knowledge of its promoters, acquired before its organization.

2. SAME—FRAUD.

A corporation is bound by the knowledge of its officers who fraudulently procure a subscription to its capital stock, if it ratifies the act of its agents by knowingly accepting the fruits of the deception.

3. FRAUD—MISREPRESENTATIONS—RESCISSION.

A statement by the agent of a corporation for the sale of its capital stock that its property cost it a certain sum of money is not a mere expression of opinion, but a statement of a fact which, if relied on by the subscriber, and it proves to have been false, may, as against the company, be sufficient ground for rescinding the contract of subscription.

4. SAME.

The victim of a wrong wilfully committed by false representations as to a material fact is not to be denied relief merely because he was unsuspecting, or because he might have ascertained the falsity of the representations by an investigation of public records.

5. SAME.

Generally, a subscriber to the capital stock of a corporation cannot exempt himself from liability on the ground of fraud of the company in misrepresenting or concealing facts which induced the subscription, unless, within a reasonable time after discovery of the fraud and before rights of innocent third parties have accrued upon the faith of his name, he rescinds or offers to rescind the contract and returns or offers to return his stock to the company. The facts of this case held to excuse an offer to return the stock.

6. SAME.

By false representations of the agents of a corporation as to the value of its property, Z. was induced to subscribe for shares in the capital stock of the company and to give a nonnegotiable note in part payment. The note was pledged as collateral security March 16, 1893, and suit was brought thereon by the receiver of the pledgee October 7, 1893. Z. had discovered the fraud in July of that year, but was not chargeable with negligence in failing to make the discovery earlier. *Held*, there was no such laches as to preclude him from setting up as a defense a want of consideration arising out of the fraud.

*Appeal from the District Court of Arapahoe County.*

THE action was by Adams, as receiver of the Commercial National Bank, upon a nonnegotiable promissory note for thirty-five hundred dollars, executed by the appellant Adolph J. Zang to the South Galveston Land Company, and by it transferred to the South Galveston Investment Company, and by the latter company transferred to the bank.

The execution of the note was admitted, and the defense was that it was given in part payment of a subscription for two hundred shares of the capital stock of said Land Company, which subscription was induced by false representations of the company.

The trial was to the court without a jury, which found the issues generally for the plaintiff, and gave judgment against the defendant for $3,986.50, the full amount of the note. The defendant appeals.

Messrs. C. E. & F. HERRINGTON and Mr. S. L. CARPENTER, for appellant.

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

In view of an admission by the plaintiff as to notice of the alleged infirmity of the note, this controversy is to be treated as though it were one between the payee and maker. Upon the evidence, in so far as it pertains to the material questions, there is no controversy. The only difficulty arises in the application of the law to the admitted facts.

The Land Company was organized for the sole purpose of acquiring title to, and improving and selling, a tract of land known as South Galveston, on Galveston Island, in the state of Texas. This land was all that the company owned, and constituted its sole assets. The capital stock of the company was $500,000, divided into 5,000 shares of the par value of $100 each, $35 of each share being payable in cash, the balance in installments payable at stated times and in fixed sums.

The defendant bought at its par value 200 shares of the stock of the company through George J. Gray, its president, and the proof is that Gray then represented to him that the land cost $425,000. The claim of defendant now is that the actual cost was only $110,000. Zang had never seen the land, knew nothing as to its cost or value, and implicitly relied upon this representation, and would not have bought the stock had he known what the real facts were.

That the controversy between these parties may be more clearly understood, we give, in brief, the contentions of their respective counsel. That of the defendant, as just indicated, is that the admitted facts show a want of consideration for the note. Upon the other hand, the plaintiff's contention is that the representations, whether true or false, were made by a promoter of the company, for which the latter is not liable; that, whether true or false, they are, substantially, expressions of opinion as to the value of the property, and of a character which does not avoid the contract of subscription, even if the same were made upon the faith thereof; that the defendant should not have relied upon them, but might have ascertained the facts in the case by consulting the records in Galveston; that before he can defeat an action upon the note, he must have rescinded the contract and notified the Land Company (the payee) that he would not be bound by his subscription, and thereupon delivered, or tendered, to the company his certificate of stock; that if the representations were made by the company, or by its authorized agent, and if false, and acted upon, ground for rescission, still the evidence shows that they were true.

The cases like *Davis Wheel Co. v. Davis Wagon Co.*, 20 Fed. Rep. 699, and *The Distilled Spirits*, 11 Wall. 356, cited by the appellee, are not applicable here, though correctly stating the law under the facts of those cases. They go to the point, *inter alia*, that a corporation is not affected with notice of facts within the knowledge of its promoters, acquired before the corporation was organized. It may be, and doubtless is, true that these promoters perpetrated frauds

upon their company by acts committed both before and after the company was incorporated. With these we are not now concerned. In the case at bar, Zang purchased his stock after the company was incorporated, and obtained it directly from the company itself, through its president. If there was fraud in securing the contract of subscription, it was that of the company, and the company is bound, not only because Gray was its agent and Zang was justified in so believing, but because the company ratified the act of its agent by knowingly accepting Zang's money, and applying the same to its own use. If this were not so, a corporation could never be bound, for it can act only through its agents.

The statement by Gray, as the agent of the company for the sale of stock, that the land cost the company a certain sum of money, is not a mere expression of opinion by him as to its value. One who relies upon the truth of such a statement may, by a fair interpretation of the language, take it to mean not that the agent believes the land to be of that value, but that the company actually paid to its grantor that amount. If so, then this is a material fact which naturally would tend to make the stock, in the eye of a contemplated purchaser, worth more than if the land had cost the company but one fourth of such sum. We think this representation one of fact—a material fact—and, if relied upon, and it proves to be incorrect, is a sufficient ground for rescinding the contract of subscription as against the company, unless the right has been lost through the laches or fault of the subscriber. That this statement was made, that it was relied upon by the defendant, that he had the right to rely upon it, that it was false, and was the inducement for the purchase of the stock, the testimony leaves no room for doubt. *Van Epps v. Harrison*, 5 Hill (N. Y.), 63; *Henderson et al. v. Henshall*, 54 Fed. Rep. 320; *Page v. Parker*, 43 N. H. 363.

The contention that the defendant ought not to have believed Gray, but should have investigated the records at Galveston for the purpose of ascertaining the facts, and that because he did not do so he therefore should be held to his

contract as a punishment for his credulity, does not commend itself to us with special force. Where a wilful wrong has been committed, courts are not keen to find an avenue of escape for the wrongdoer, merely because the victim has been unsuspecting. The defendant was not bound to make inquiries to ascertain whether or not the cost of the land was in fact as represented by Gray, but he was justified in believing the representation as made. *Wilson v. Higbee*, 62 Fed. Rep. 723, 726, and cases cited.

But if he had consulted the records, he would have found in a recital in an instrument there recorded that the company paid for the land $425,000; but the testimony in this case shows beyond any controversy that such pretended consideration was, in fact, never paid, and was never agreed, or intended, to be paid, to the grantor by the company; but that, by a fictitious and fraudulent arrangement between some of the promoters of the company, the face of the record was made to show such a payment, whereas, in truth and in fact, the entire consideration which the company agreed to pay for the land was $110,000; $15,000 of which paid in cash, and a note of the company for the balance of $95,000 given, secured by a trust deed upon the premises, which trust deed was afterwards foreclosed, and the entire property of the company taken from it in part satisfaction of this indebtedness. So that the defendant's right to rescind because of his failure to examine the records, even were that required, is not thereby lost, because such investigation would not have revealed the truth.

The general rule undoubtedly is, that to entitle a subscriber to the capital stock of an incorporated company to exempt himself from liability upon his subscription on the ground of fraud of the company in misrepresenting, or concealing, facts which induced the subscription, he should, within a reasonable time after the discovery of the fraud, and before the rights of innocent third parties have accrued upon the faith of his name, rescind, or offer to rescind, the contract, which includes the duty to return, or offer to return,

his stock, to the company. This rule cannot be applied in this case. Zang did not discover the fraud until some time in July, 1893, and we are satisfied that he is not to be charged with negligence in not sooner discovering the same. The note sued upon had been pledged as collateral security to the bank on March 16th of the same year. On September 28, 1893, the Land Company's note, which was secured by a trust deed upon its property, was foreclosed because of default in the payment of interest and a part of the principal. The company then had no property of any kind, and the stock was absolutely worthless. This suit was brought October 7, 1893. It would have been a useless proceeding for Zang to have tendered his stock to the company and notified it that he was no longer bound, and asked for a return of his note, at the time he discovered the fraud, for the note had theretofore been pledged as collateral security with the bank, and the stock was of no value whatever.

We are of opinion that the two months intervening between July, 1893, when the fraud was discovered, and October, 1893, when this suit was brought, was not such an unreasonable time as to preclude Zang from setting up as a defense when thus sued upon the note a want of consideration arising out of the fraud of the company, and no rights of innocent, *bona fide* holders were involved.

The last contention is that the evidence in the case shows that this land actually cost the company $425,000. In brief, the facts upon this phase of the case as disclosed by the record are as follows: The promoters of this company, for its benefit, took up an option which they held from Mott, the owner of the land, for $110,000, and conveyance was to them direct. Before incorporating the company, they deeded the land to one Pratt for a pretended consideration of $400,000. Pratt then gave his notes to one E. B. Jones for $230,000, which was secured by a trust deed upon the land. Thereafter Pratt conveyed the premises to the Land Company for an alleged consideration of $425,000, and in the deed the Land Company assumed and agreed to pay, as part of the purchase

price, the balance of the indebtedness due to the original owners of the land of $95,000, and the said notes for $230,000.

The evidence discloses, beyond all question, that Pratt was simply a go-between of the company and the promoters, that for the notes pretended to be given to Jones there was no consideration whatever, nor for the trust deed securing the same; nor were the notes ever delivered to Jones, but were retained by Gray and his fellow promoters until they were delivered to the Land Company canceled as having been paid, though they were never paid, although the trust deed securing them was in due time released. There never was any intention upon the part of any of the parties to these various frauds that the company should be charged with the payment of any sum of money except the $110,000, which was the price to be received by the original owner of the land, nor was there any agreement to pay any other or larger sum therefor; and these mesne conveyances were simply a subterfuge, a trick and a fraud, perpetrated by Gray and his fellow promoters for purposes of their own.

What is clearly apparent to us is that the cost of this land was not as represented by Gray, and that is as far as we need to go in the investigation of the various acts of fraud undoubtedly committed by the promoters of this company, and by the latter through its officers.

In the brief of appellee is set out what purports to be a finding of facts by the court, although we do not find the same either in the transcript of the record or in the abstract; but, if it correctly sets forth the findings of the court, it appears therefrom that the court considered this representation of the cost to be merely an expression of opinion as to value, and not sufficient to justify a rescission of the contract by a stockholder who bought upon the faith thereof. The court also apparently found that the land cost the corporation $425,000. This finding has no foundation in the facts of this case, but evidently was an inference drawn by the court from the recital of such consideration in the deed which the company received from Pratt; but, as we have shown above,

this was clearly, under the undisputed evidence in the case, an incorrect recital. The point made that the subsequent conduct of Zang, in connection with other stockholders, in forming a syndicate to buy this property, estops him now to repudiate his subscription to the stock of the original company, is not tenable. If he still has an interest in the land, which he denies, it is in virtue of an entirely distinct agreement, and he has paid full compensation therefor.

Upon the whole case, we are satisfied that a fraud was perpetrated upon Zang, and that he should not be required to pay this note. This works no hardship upon the bank, for the reason that it took the note charged with full notice of the equities attaching thereto. The conclusion upon this case arrived at by us finds ample support in the cases *supra* and in the following, among other authorities that might be cited: *Savage v. Bartlett*, 78 Md. 561; *Huron Printing, etc., Co. v. Kittleson*, 4 So. Dak. 520; *Wilson v. Higbee, supra; Directors, etc., Cent. Ry. Co. v. Kisch*, 2 House of Lords Law Reps. 99; *Oakes v. Turquand*, 2 House of Lords Law Reps. 325; *Capel & Co. v. Sim's, etc., Co.*, 58 Law Times Reps. 807; *New Brunswick, etc., Ry. Co. v. Muggeridge*, 1 Drewry & Smale's Reps. 363, 380; 2 Thompson's Comm. on Corporations, chap. 24, secs. 1361, 1383; *Virginia Land Co. v. Haupt*, 90 Va. 533; *Aaron's Reefs v. Twiss*, 74 Law Times Reps. 794; 30 Am. Law Rev. 940, 946.

It follows that the judgment of the district court should be reversed with instructions to dismiss the complaint, and it is so ordered.

*Reversed.*