[No. 3844.]

COLE, EXECUTRIX, v. SMITH ET AL.

1. CONTRACTS—DECEIT—REMEDIES—ELECTION.

When a party to a contract discovers that he has been defrauded, either one of two remedies is open to him: to rescind the contract, or to sue for damages on account of the deceit; but he cannot pursue both remedies, and if he elects to sue for damage, he cannot thereafter pursue the other remedy. By choosing to sue for damage he thereby affirms the contract *in toto*. A contract cannot be affirmed in part and rescinded in part.

2. FRAUD—VENDOR AND VENDEE—REPRESENTATIONS OF VALUE.

Statements by a vendor as to the value of real estate sold, or that he had been offered a certain price, though false, are not such representations of fact as to be the foundation of an action, except in cases of fiduciary relations between the parties or where they are not on equal terms, or where some artifice has been employed by the vendor to prevent the vendee from obtaining the information that he might otherwise secure.

3. CONTRACTS—VENDOR AND VENDEE—LIQUIDATED DAMAGE.

Where the purchasers of a certain herd of range cattle knew that the seller had purchased the herd several years before without a round-up or counting of the herd and that none had thereafter been made, and that the seller did not know how many cattle he had, and where the seller refused to sell at so much a head for the number actually delivered, a contract whereby the seller agreed to deliver all of his range cattle and if he failed to deliver a certain number as provided for he was to forfeit part of the property received in exchange and it was further provided that deeds to the property to be forfeited should be placed in escrow, to be delivered to the purchasers in case of default, and that the property thus delivered was to be in full liquidation of all damage for the default, the purchasers took the risk as to the number of cattle and were bound by the contract and must accept the property provided for in the contract for a default in delivering the number of cattle provided for and could not maintain an action for damage against the seller.

*Error to the District Court of Arapahoe County.*

THIS is an action for deceit based upon false representations made by the original defendant Lyman H. Cole con-

cerning the number of cattle owned by him, which he exchanged with the plaintiffs for real estate. The complaint alleges that the plaintiffs, as parties of the second part, entered into a written contract with the defendant, as party of the first part, by the terms of which the latter agreed to deliver to the former, at a certain place, twenty head of saddle horses and all of the defendant's range cattle ranging in Montrose, Gunnison, Delta, and other counties in the state of Colorado west of the Continental Divide. Only such portions of the contract, omitting mere formal language, as are material on this review are here reproduced:

"During the spring round-up the first party is to gather and on or before the close thereof count out and deliver to the said second party 1,000 head. * * * If the first party shall fail to count out and deliver the entire 1,000 head as provided for, he shall forfeit a part of the property received or to be received by him in payment for said cattle as hereinafter mentioned" (the property, town lots in Denver, is here described) "a deed for which shall be left in escrow subject to delivery for the purpose of carrying out this agreement, and if the party of the first part shall not count out and deliver as many as 800 of the aforesaid 1,000 head, he shall forfeit the property known as the Diamond Joe ranch, consisting of 320 acres, a deed for which to Charles M. Smith and Henry C. Donnell is also placed in escrow to be delivered to the second party in case of such failure. It being understood and agreed that no personal liability shall attach to the first party for any damage resulting, or which may be claimed to result, from a failure to count out and deliver the whole number of cattle, but the forfeiture or forfeitures aforesaid, as the case may be, shall cover and be in full of all such damages."

Then follows a clause describing the real estate which was the consideration for the cattle given by the parties of the second part and certain other provisions not here material. And then it proceeds: "The deeds to be placed in escrow * * * with such indorsements as shall provide for the de-

livery of the same to the said second party herein in case of default as herein provided for;" and if there is no default, then certain other provisions are made with reference to the various deeds and papers.

The complaint avers that the inducements which led the plaintiff to make this agreement were representations by the defendant that he was the owner of, and would agree to deliver, not less than 1,000 head of a certain herd of cattle ranging west of the Continental Divide, and in exchange therefor would accept the real property described in the agreement to be conveyed by the plaintiffs; that if he failed to count out and deliver 1,000 head of said cattle, he would forfeit and retransfer a portion of the real estate which he was to receive in exchange; and if he failed to deliver 800 head he would forfeit and transfer the " Diamond Joe " ranch already owned by him. It is further averred that, " as an inducement to the consideration of the Diamond Joe ranch as compensation for the failure to deliver the full 800 head," the defendant represented that the ranch was fully worth the sum of $5,000 and was very valuable, and that he had been offered $3,000 in cash therefor, and had refused the same, because the real value of the property was more; that the location of the cattle and the ranch is a great distance from Denver where these representations were made; and the plaintiffs further say that they did not know the true condition, size and character of the herd, the number of cattle therein, nor the situation, value and condition of the Diamond Joe ranch, but were obliged to rely solely and entirely upon the truth of the representations made concerning them by the defendant; and were induced to make, and did make, the exchange of property mentioned in the agreement solely because they believed and relied upon the truth of the defendant's representations; that the real estate by them transferred was worth $20,000. Apt averments are made that defendant falsely and knowingly made these representations for the purpose of deceiving and injuring the plaintiffs.

It is also averred that the defendant was able to count out

and deliver to the plaintiffs only 250 head of cattle; and that he has not recompensed plaintiffs for his failure to deliver the entire number and has not kept his agreement to transfer the real estate to plaintiffs as provided in the so-called forfeiture clauses; that the Diamond Joe ranch is valueless; and that it is untrue that defendant was offered in good faith $3,000 therefor; and he knew when plaintiffs accepted the ranch as a forfeiture for a failure on his part to keep his agreement that plaintiffs relied solely upon the truth of the representations he made to them concerning it, and he knew when he made them that they were false.

The answer admits the making of the agreement, but denies the allegations of wrongdoing charged against the defendant. It admits that not more than 250 head of cattle were delivered by him, and alleges that upon his failure to deliver at least 800 he notified the plaintiffs that the deeds which had been duly executed, as provided in the contract, and left in escrow conveying the premises which were to be forfeited in case of the default in question, were ready to be, and would be, delivered to them whenever they called for them, and the defendant in his answer again offered the deeds to the plaintiffs as full satisfaction under the terms of the agreement for the alleged damages sustained by them by reason of their not receiving the full number of cattle specified. A second and affirmative defense was also interposed, but it is not important. Plaintiffs filed a replication which is referred to in the opinion.

Trial was to a jury which returned a verdict in favor of the plaintiffs for about $11,000, of which the court required plaintiffs to remit a portion so as to leave the sum of $6,374, and then rendered judgment in favor of the plaintiffs for the latter amount to be paid in due course of administration, the defendant having died pending the action. From this judgment the defendant, in her capacity as executrix, comes here on error.

Messrs. BENEDICT & PHELPS, for plaintiff in error.

No appearance for defendants in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The fact that defendants in error have not appeared and filed a brief has imposed upon us an extra burden in making a more diligent examination of the record than otherwise would have been required.. The result of that examination and a reading of the authorities satisfy us that the judgment should be reversed.

It has been a matter of no little difficulty to select the grounds upon which to base our decision. We are constrained to say that some errors (not referred to in the opinion) were committed by the trial court which, of themselves, would require us to send the cause back for a new trial; but we shall not discuss them, for the view that we take of the case upon the whole record is that the plaintiffs are not entitled to any relief.

It is doubtful if the complaint itself states a cause of action, and it is a serious question whether the replication does not depart from the cause of action defectively stated in the initial pleading. It would unduly prolong the opinion separately to discuss the various legal propositions involved in the controversy, and in view of this, and the additional fact just alluded to, that the plaintiffs have failed on the merits, we shall dispose of the case as though all of the allegations of the replication were in the complaint, and show from the pleadings and evidence that the cause should be dismissed.

When the plaintiffs discovered that they were defrauded, at least two remedies were open to them: first, to rescind the contract; second, to sue for damages on account of the deceit. These remedies are inconsistent, not concurrent. Both were not open to plaintiffs, and when once they made their election to sue for damages, they were bound thereby and could not thereafter pursue the other remedy. In choosing, as they did, to bring this action for damages, they thereby

affirmed the contract, and if they recover at all, it must be upon the case as made, and not upon some other theory. Had they elected to rescind, the contract must have been rescinded *in toto;* and when they did elect to sue for damages on account of the deceit, the contract must be affirmed *in toto,* and not affirmed in part and disaffirmed in part. *Potter, Judge, v. Titcomb,* 22 Me. 300; *Farmers' Bank of Va. v. Groves,* 12 How. 51; *Cobb v. Hatfield,* 46 N. Y. 533, 536; *Schiffer v. Dietz,* 83 N. Y. 300, 308; *Moller v. Tuska,* 87 N. Y. 166; *Nichols v. Pinner,* 18 N. Y. 295, 312; *Joslin v. Cowee,* 52 N. Y. 90; 8 Amer. & Eng. Ency. of Law (1st ed.), 650, *et seq.*

Defendant strictly complied with his agreement, embraced in the so-called forfeiture clauses, by placing in escrow the deeds for the real estate to be delivered to plaintiffs in case of his default, and the deeds have been ready for them whenever demanded. Plaintiffs have not only expressed a willingness to receive, but have received and had the benefit of 250 head of cattle delivered under the contract, and have averred their willingness to accept, under the first forfeiture clause, the deed for the town lots in Denver as compensation for the failure of defendant to deliver 1,000 head, but refuse to take as compensation for the shortage below 800, the deed of the ranch. They expressly affirm this contract in part, and their election of the remedy for damages involves an affirmance of the contract in its entirety. But they may not rescind in part and affirm in part. They should not be allowed to take advantage of those provisions of the contract which are favorable, and reject those which are onerous.

Ordinarily, the enforcement of this general rule would be decisive of this case against plaintiffs. Some uncertainty, however, prevails as to just what bearing, under plaintiffs' theory, the representations concerning the ranch have. While the complaint alleges that they operated on the minds of the plaintiffs only to induce them to accept the ranch as compensation for defendant's specified second default, the replication charges that these representations, combined with those

concerning the number of cattle, constituted the inducement to plaintiffs to enter into the contract in its entirety. Taking the view most favorable to plaintiffs and giving them the benefit of every reasonable construction, viz., that they should be released from the terms of the second forfeiture clause if the fraud of the defendant led them to make it, and assuming, but not deciding, that this contract and the considerations moving from the defendant are susceptible of division and separate consideration, and that plaintiffs are in a condition to accept one and reject the other of the forfeitures provided, and thus affirm in part, and in part disaffirm, the contract, we now proceed to demonstrate that neither the complaint, in its allegations touching the ranch, nor the evidence responsive to it, nor both combined, are sufficient to relieve plaintiffs from the obligations of their contract in its entirety.

A mere affirmation or exaggeration by the vendor of real estate of its value and the price he has been offered for it are, as stated by Kerr in his work on Fraud and Mistake at page 84, "assumed to be so commonly made by persons having property for sale that a purchaser cannot safely place confidence in them;" and while this court has held in *Zang v. Adams*, 23 Colo. 408, in its peculiar circumstances, that a statement by the vendor that property cost him a certain sum of money is not a mere expression of opinion, but a statement of fact which, if relied upon and proved to be false, may be a ground for rescinding a contract entered into upon the faith of it, it is quite uniformly held that a statement by a vendor that he has been offered a certain sum for his property, or that it is of any given value, are not such representations of fact as to be the foundation of an action. *Wier v. Johns*, 14 Colo. 493; *Mayo v. Wahlgreen*, 9 Colo. App. 506, 514; *Dillman v. Nadlehoffer*, 119 Ill. 567, 575; *Henderson v. Henshall*, 54 Fed. Rep. 320; *Gordon et al. v. Parmlee*, 2 Allen, 212; *Shade v. Creviston et al.*, 93 Ind. 591; *Hauk v. Brownell*, 120 Ill. 161; *Parker v. Moulton*, 114 Mass. 99; *Holbrook v. Conner*, 60 Me. 578; *Noetling v. Wright*, 72 Ill. 390.

There are exceptions to the general rule, as where there is a fiduciary relation between the parties, or when they are not upon equal terms, or where some artifice has been employed by the vendor to prevent the vendee from obtaining the information that he might otherwise secure. And in some cases, possibly, representations as to value, and certainly false representations as to the cost of the property to the vendor, have been held to be actionable. But we think the complaint in this action has not, and certainly the evidence in support of it has not, brought this case within any of the exceptions to the general rule. Therefore the representation by the defendant as to the value of the ranch property was not a statement of fact on which plaintiffs might rely, or be heard to complain if they did. At most, it is an expression of opinion, a false affirmation of value. If the plaintiffs were entitled to, and did, rely upon the alleged false statement by the defendant that he had been offered $3,000 for the ranch and had refused it—and we find no authority that this is of that class on which they may rely—still that circumstance is not important here, for there is no evidence in the record that we have been able to find that this statement was, as a matter of fact, untrue. This element, therefore, of the bid for the property is eliminated from the case.

There was some testimony tending to show misrepresentations by the defendant as to the quality and condition and productiveness of the ranch, and as to the character and value of its improvements. It has been held, as in *Andrus v. St. Louis Smelting Co.*, 130 U. S. 643, that such false representations may be the ground for an action. A careful examination of the pleadings, however, discloses that the plaintiffs have not alleged that the defendant made any such statements.

The parties to this agreement themselves anticipated the probability that the plaintiffs would not receive the entire number of cattle that was designated, and a compensation was provided for them in that event, to which it is only fair that they should be limited unless they have shown some good

Vol. xxvi—33

reason why they should be relieved from its obligation, and in this they have signally failed.

There is still another reason why the plaintiffs ought not to recover. Without any substantial conflict in the testimony it appears that in December, 1891, the plaintiffs made the first advance towards the exchange of properties. They then, or soon thereafter, learned that the range cattle owned by the defendant were purchased by him several years before, and that no round-up or counting of the herd then or thereafter, had been made. Defendant did not know how many cattle he had—did not profess to know except as a deduction from other facts, of which plaintiffs were informed—and when the plaintiffs desired to pay so much a head for the number actually delivered, he refused to make the arrangement upon that basis. The cattle were running on the public range, and from time to time sales from and additions to the herd were made.

As the result of the first negotiations the parties were unable to agree, as plaintiffs themselves assert, because they were in doubt about the number of the herd. Subsequently, and about the latter part of February, 1892, the plaintiffs again approached the defendant to renew the negotiations for the exchange which was soon thereafter consummated in accordance with the terms of the agreement set up in the complaint. In the very nature of things, and in view of the clauses of the written contract by which the defendant limited his liability for a failure to deliver any given number of cattle, and in view of the previous information which plaintiffs had received of the character of the herd, and the fact that they were stockmen of many years' experience—which must have taught them the impossibility of knowing the precise number in a herd of range cattle—and the fact that they knew, in a general way, the value of a ranch situate as was this Diamond Joe ranch, they must have realized that they were running a risk, and accepted it when they made the contract.

Whatever may have been the antecedent representations of the defendant concerning the number of cattle, about which he did not positively speak, and as plaintiffs themselves, as experienced men, must have known he could not with accuracy tell, and even conceding that he made the statements concerning the value of the ranch and the offer he had received attributed to him, we are clearly of opinion that the plaintiffs in making this contract did not rely and ought not to have relied upon them. We have no doubt about it if we look alone to the evidence produced at the trial. And when we consider that, in reducing their agreement to writing, the defendant limited his liability for a failure to deliver any specified number of cattle, and plaintiffs, anticipating a shortage, accepted the indemnity provided, this conclusion is irresistible. These facts, of themselves, were sufficient to put the plaintiffs upon their guard against trusting to any representations concerning the number which had theretofore been made, and if, notwithstanding the warning, they did put their trust in such unreliable statements, they cannot invoke the aid of the law to relieve them from the consequences of such unbusinesslike credulity. They could not shut their eyes to the facts which they knew, or by proper inquiry could have ascertained, that they were buying a herd of cattle ranging on the public domain, the number of which was unknown both to them and to the defendant, and that necessarily they ran more or less risk in making the exchange which they did. That this was evident to their minds at the time, whatever they may now say to the contrary, is conclusive against them, when it is considered that they provided for the very contingency about which they now complain by requiring to be executed and delivered deeds of real estate which were to be their compensation in case of the defendant's default. With respect to the default concerning the thousand head, there is no question but that the compensation provided was ample; and as we have seen that they are not in a position to be relieved from the necessity of accepting the ranch for the other default, it seems clear that they are not entitled to any damages in this action.

The judgment will be reversed and the cause remanded with instructions to the district court to dismiss the action.

*Reversed.*