## NEGLIGENCE OR UNREASONABLE DELAY IN RECISSION OF A CONTRACT.

### JOHN J. SNIDER, JR., v. JOHN H. DIERKES.

Common Pleas Court of Hamilton County.

Decided, September 16, 1921.

*Promissory Note—Executed for Life Insurance—Policies More Expensive than Anticipated and Fail to Incorporate Provision Contracted for—Notice to Solicitor of the Insurance that Note Would Not be Paid.*

Whether or not there was unreasonable delay in rescinding a contract induced by false representations is a question for the jury under the evidence and instructions by the court appropriate to the circumstances of the particular case.

*Heintz & Heintz,* for plaintiff in error.

*L. G. Hilpp* and *D. W. Davies,* contra.

Error to the Municipal Court of Cincinnati.

DARBY, J.

Dierkes was plaintiff, and Snider defendant in the court below. The action was upon a promissory note for $264.15. The face of the note shows that it was payable to John W. Fisler, Agent; it was by him endorsed to Dierkes. The defense was that the note was given in consideration of insurance policies in the New York Life Insurance Company, of which Dierkes was General Agent, and that Fisler was a general soliciting agent; that representations were made that the policies would cover accident liability and that the premium would be rated according to the age of the defendant, which was thirty-three years; that when the policies were delivered they were not the ones applied for, and did not contain the disability liability, and instead of being rated at the age of thirty-three years were rated at the age of forty-eight, thereby greatly increasing the premium.

Briefly stated the testimony was that Fisler solicited the application of Snider and then turned it over to Dierkes, who procured the policies issued by the New York Life Insurance Company; that when they were delivered to Snider he was un-

able to pay the cash premium but gave the note payable to Fisler as agent, and that the note was drawn up by Dierkes and handed to Fisler in the presence of Snider and subsequently endorsed by Fisler to Dierkes.

The defendant claimed that several days after the delivery of the policies he discovered that the disability liability was not included in the policies, and that the premium was rated as of the age of forty-eight years; and that within a very short time thereafter he told Fisler that the policies were not what he wanted, and he would not keep them, and would not pay the note; he made this statement, or the substance of it, to Fisler on several occasions thereafter within two or three weeks after the delivery of the policies.

Snider was the keeper of a small grocery and unfamiliar with transactions of this character.

After the endorsement of the note to Dierkes by Fisler, it was put in bank for collection, and a week or so before its maturity notice was sent to Snider of the maturity of the note, and he thereupon went to the office of the insurance company, took the policies with him, delivered them to Dierkes, stated to him they were not the policies he had applied for, that he would not keep them and would not pay the note.

The testimony of Snider as to the rate at which the premium was charged and that he was misled as to the disability clause referred to, was sharply contradicted by Fisler and Dierkes.

At the conclusion of the testimony, and of its own motion, the court instructed the jury to return a verdict for the plaintiff in the following words:

"The court finds that when the plaintiff discovered that the policies were not what he contracted for it was his duty to return or to make an effort to return the policies sooner than he did as shown by the evidence; that it was an unreasonable delay and therefore he can not avail himself of his own fault."

A verdict was thereupon rendered for the plaintiff for the full amount.

The only question considered by this court is as to whether or not the court below was justified in finding as a matter of

law that the defendant below did not rescind, or attempt to rescind the contract within a reasonable time. It should be kept in mind that the note was payable to Fisler; that there is no showing of any knowledge on the part of Snider that the note was ever transferred to Dierkes; that Snider thought he was making the contract, or as he puts it, getting the policies through Fisler; that when he claims to have discovered that the policies were not what he applied for, either as to the liability or as to the premium, that he went to Fisler and told him that he did not want the policies and would not pay the note; and it was not until demand was made for the payment of the note by the bank that he had any conversation with Dierkes with reference to surrendering the policies, or the non-payment of the note. Six weeks, or perhaps a little more passed between the time of the discovery by Snider that the policies were not what he applied for and his returning them to Dierkes; but, as stated, in the meantime he had repeatedly stated to Fisler that the policies were not those contracted for, and that he would not pay the note.

This court is of the opinion that under the circumstances of this case it was a question which should have been submitted to the jury, to determine as to whether or not there had been any unreasonable delay in rescinding the contract after the discovery of the alleged fraud.

What is reasonable time within which an act must be done has variously been held to be—question of fact, question of law, and mixed question of law and fact; but the recent tendency of decisions in Ohio is to leave such questions as to the reasonableness of time to the jury under proper instructions.

In *Liability Assur. Corp.* v. *Roehm*, 99 O. S., 343, the court expressly disapproves of the last clause of the fourth proposition of the syllabus in the case of *Travelers' Insurance Co.* v. *Myers & Co.*, 62 Ohio St., 529. The syllabus so disapproved reads as follows:

" 'Immediate written notice' in such stipulation means written notice within a reasonable time under the circumstances of the case; *and where the facts are not disputed, what is a reasonable time is a question of law.*"

The underscored part of the syllabus is disapproved by the Supreme Court in that case, and the court goes on to say that under the peculiar facts stated in the Roehm case, the jury should have been permitted to pass upon the question as to whether or not the conduct of the insured in failing to give the notice called for by the policy was not excused. See page 348. See, also, *Hickman* v. *Insurance Co.*, 92 O. S., 87.

Further light is thrown upon this question by the fourth syllabus of *Gibbs* v. *Village of Girard*, 88 O. S., 34, as follows:

"What is ordinary care, what is reasonable safety, and the like, are, in the first instance, usually questions for the determination of the jury under all the evidence and proper instructions by the court appropriate to the particular circumstances of each case and the issues thereof."

In *Zang* v. *Adams*, 23 Colo., 408, on page 413 is the following:

"We are of the opinion that the two months intervening between July, 1893, when the fraud was discovered, and October, 1893, when suit was brought, was not such an unreasonable time as to preclude Zang from setting up as a defense, when thus sued upon the note, a want of consideration arising out of the fraud of the company, and no rights of innocent *bona fide* holders were involved."

See, also, *McCarty* v. *New York Life Insurance Co.*, 74 Minn., 530, which holds that:

"That, upon the evidence, the question whether the agent made the alleged false representations, and, if so, whether the insured had lost his right of rescission by negligence and unreasonable delay in not sooner discovering the fraud, were for the jury."

See, also, *Norton* v. *Gleason*, 61 Vt., 474; *Gridley* v. *Tobasco Co.*, 71 Mich., 528; *State* v. *Schaeffer*, 96 O. S., 215-228.

For error in not submitting to the jury the question of the reasonableness of the time and instructing the verdict for the plaintiff, the judgment of the court below will be reversed.