No. 11,081.

TOMKINS *v.* TOMKINS.

Decided February 1, 1926.

Action for damages for breach of contract. Judgment for plaintiff.

*Reversed.*

1. BILLS AND NOTES—*Promissory Note—Liability of Endorser.* The liability of the payee of a promissory note who endorses when transferring it to another, is discharged by the acts of the

endorsee in cancelling and returning it to the maker, and accepting in lieu thereof other evidences of indebtedness.

2.        *Note—Payee—Endorsement—Liability.* The payee of a promissory note is discharged from his liability thereon as endorser when the endorsee discharges the note and accepts in lieu thereof a new and distinct obligation which is different in amount, different as to parties, different as to maturity, and different as to the payee's remedies as endorser against the principal maker.

3.    CONTRACTS—*Enforcement.* Courts have no right to force an agreement upon a party that he did not make.

4.        *Construction.* Courts must give effect to all parts of a contract. An agreement cannot be both affirmed and denied; neither may a party accept its benefits without its burdens, nor ratify in part and disaffirm in part.

5.    APPEAL AND ERROR—*Sufficiency of Evidence.* In an action for damages for alleged breach of contract, record reviewed and held not to sustain a judgment for plaintiff.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. JOHN L. SCHWEIGERT, Mr. FOSTER CLINE, for plaintiff in error.

Mr. J. W. KELLEY, Mr. JEAN KELLEY, for defendant in error.

*Department One.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS controversy arose over two words, "without recourse." It began, not over the meaning of the words, but whether, in this instance, the plaintiff in error, who was defendant in the trial court, had the right to employ such words at all. Defendant was the payee named in an unsecured, negotiable promissory note of a third party, payable on demand. He had agreed to indorse, transfer,

and deliver the note to plaintiff, the defendant in error. He did so, but added the words "without recourse" above his signature on the back of the note.

Plaintiff asserts that she accepted the note subject to her disapproval of the two objectionable words. Otherwise, the instrument was satisfactory to her.

After so accepting the note, plaintiff made a new agreement with the maker, concelling and returning the original note to such maker. She then sued defendant for the difference claimed by her between the value of such note without recourse and what she contends its value would have been with recourse on defendant. She recovered judgment in the sum of twenty-five thousand dollars. Defendant brings error. We shall speak of the parties as plaintiff and defendant as in the trial court.

We shall consider: (1) Their situation before the alleged breach of contract; (2) their position thereafter and the causes contributing thereto, and (3) the legal effect of their altered rights.

We are relieved of the necessity of reviewing the law or evidence at any length upon their initial controversy as to whether defendant had the right to add the words "without recourse" above his signature on the back of the note, because, irrespective of this, our decision is controlled by subsequent events. We may assume that defendant should have indorsed the note in blank, as plaintiff contends, and proceed upon such theory.

1. As to the situation of the parties before the alleged breach:

Plaintiff is defendant's sister-in-law. Defendant and his brother, Lewis H. Tomkins, plaintiff's deceased husband, were business partners for many years, conducting a chain of stores in Colorado, among them, one at Aspen. When the brother died, his wife, the above named plaintiff, was made administratrix of his estate. Thereafter, plaintiff for herself individually as well as upon behalf of the estate, entered into a written settlement agreement with defendant, to divide the partnership property. The agree-

ment is dated February 6, 1919. Under its terms, defendant was to acquire all of the partnership assets and to pay plaintiff one hundred and twenty-five thousand dollars in full for her late husband's interest therein, payable part in cash and part by the note hereinabove referred to. The only part of the agreement necessary to quote, reads:

"Second: That said purchase price of one hundred and twenty-five thousand dollars ($125,000) is made in manner following, to-wit: By the instant payment of sixty-six thousand seven hundred and sixty four and 40-100 dollars ($66,764.40) in cash and the balance of fifty eight thousand two hundred and thirty-five and 60-100 ($58,235.60), being satisfied by the transfer and delivery of that certain negotiable promissory note for the principal sum of fifty-eight thousand two hundred and thirty-five and 60-100 dollars ($58,235.60) of William R. Foutz as maker in favor of the said Henry H. Tomkins as payee, by indorsement, transferring the said promissory note and the ownership thereof to the said party of the second part" (plaintiff).

Pursuant to the above, defendant paid plaintiff the cash required by the agreement and delivered the note to her, indorsed without recourse. This settled the dispute of the parties up to this point, except as to plaintiff's objection to the words "without recourse." The note was in the usual form and contained no waiver provision of any kind.

2. As to the position of the parties after the above occurrences, and the causes contributing thereto:

Although the Foutz note was payable on demand, plaintiff made no demand for payment, either upon Foutz, the principal, or upon defendant, the indorser. Instead of this, she cancelled and returned the note to Foutz, and made a new agreement with him, the purport of which may be easily gathered from a red ink indorsement across the face of the original note as follows:

"Paid by execution and delivery of notes of equal date as follows:

| Wm. R. Fouts | 48,750.00 |
| F. M. Yates | 5,000.00 |
| Wm. B. Beck | 1,250.00 |
| Cash | 3,235.00 |
| | 58,235.60 |

The above transaction was about two weeks after the agreement had been made between plaintiff and defendant on February 6, 1919, but the. latter notes were dated back to correspond with the agreement mentioned. The new notes were all made due ten years after date, and are payable to the order of plaintiff. It will be observed that the total of the new notes to plaintiff and the cash paid to her, correspond with the original Foutz note which is the subject of the controversy. Defendant took no part in the new agreement with Foutz.

In order to secure the payment of the new notes, the makers thereof pledged to plaintiff the entire capital stock of the L. H. Tomkins Hardware Company, at Aspen, consisting of 1,000 shares. A large and controlling majority of the stock had been previously owned by defendant and plaintiff's deceased husband. Foutz had acquired all of such stock; it was for this that his note was given. The amount of Foutz's first note, $58,235.60, was based on the value of the capital stock of both Tomkins in the company, as fixed by inventory, mutually agreed upon. No discrimination was made between plaintiff and defendant in this; they were credited with like amounts. The inventory valuation was $66,175.19. The inventory figures were not only used in determining the amount that Foutz was to pay for his shares, but had been used by mutual consent of the parties in settling the Tomkins partnership affairs, entering into the consideration of one hundred and twenty-five thousand dollars paid by defendant to plaintiff in notes and cash. The same valuation was used by plaintiff in her petition to the county court for leave to sell the assets of the estate of her deceased husband. These valuations remained on February 6, 1919, when the parties made their

agreement, and two weeks later, when plaintiff made her new agreement with Foutz. There is evidence that they were too high, but we are not concerned with this, for they are the figures that the parties themselves repeatedly used in their sales, purchases, and mutual settlements at that time, long before the action was commenced. Each made the profit or suffered the loss of his or her own act at the time.

There is also evidence of serious depreciation in these valuations after the parties made their agreement, but this is also beside the point.

It will thus be seen that according to the figures agreed upon by the parties at the time, the capital stock of the L. H. Tomkins Hardware Company, which was the subject of barter, the entire amount of which with other stock was later pledged to plaintiff, all had an agreed valuation of $66,175.19, or $7,939.59 more than the face of the Foutz original note. Counsel for plaintiff argues that the Aspen store must have had debts. This may be, or they may have discounted their bills, but as the statement is argued outside of the record and without evidence, it does not assist us. We must not only adhere to the correct date, namely, the date that the parties made their agreement, February 6, 1919, but also to the figures then agreed upon by the parties.

In addition to Foutz's interest in the capital stock of the company, Foutz testified that he was worth $10,000. Other testimony makes it $2,000 or $2,500, in addition to such capital stock valuation.

The plaintiff still owns and holds the new notes that were given her in lieu of the original Foutz note. She also holds the 1,000 shares of the capital stock of the L. H. Tomkins Hardware Company, as pledge to secure the payment thereof. Some of the interest on the new notes has been paid to her; some is in default. The principal of the new notes has not been paid. The makers are in good health and the Aspen store is still a going concern, but not what it was in the old Tomkins partnership days. The

new notes may or may not be paid when they mature in 1929.

After taking the above notes and security in lieu of the original Foutz indebtedness, and holding them for about four years, plaintiff instituted suit in the district court for damages. It was tried twice, resulting in favor of the defendant the first time, and against him the second. It is in this court for the first time.

3. With the above facts before us, we shall now discuss the legal effect of the altered rights of the parties, caused by plaintiff's marking or causing the original Foutz note to be marked "Paid," and taking new notes and security in favor of herself.

The jury found the issues for plaintiff on the first cause of action, claiming damages for breach of contract. It found for defendant on the second cause, for alleged fraud. The fraud feature has been eliminated; the judgment now being reviewed is on the first cause.

Plaintiff's recovery was based upon the theory that defendant broke his contract to transfer the Foutz note to her with an unqualified indorsement, and that upon such breach, she had the right to affirm the contract and recover damages resulting from the breach. But from this point on, there has been a fatal oversight in failing to recognize the patent fact that the contract to be affirmed is the one that was made, if it was made, and not one that never existed. Plaintiff has also overlooked defendant's rights and her own responsibilities and limitations under the agreement that she has sought to have established as a basis for her recovery, that is, the contract of indorsement.

Plaintiff's counsel say: "This suit is on the contract to indorse and the jury decided the contract was to give an open indorsement." It is thus evident that if defendant broke his contract, it was to deliver a note with an unqualified indorsement by defendant, and not a note with his name thereon as principal or maker. Neither did defendant agree to pay her all cash for her interest in her

late husband's estate. This is plainly evident from the part of the agreement that has been above quoted. Therefore, if plaintiff has established a condition broken by defendant, the rights of the parties must be determined with Foutz as maker of the promissory note, defendant as payee, and as if defendant were indorser and plaintiff indorsee and owner of the note. With this situation, if what plaintiff contends be true, the liability of Foutz was primary and that of defendant secondary.

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." C. L. 1921, section 4009.

Measuring the rights of the defendant as a party secondarily liable on the instrument, he has been discharged by the acts of plaintiff in cancelling and returning the note to Foutz and marking it paid. We must consider it as a discharge and payment under the facts of this case, but if it be regarded not as payment, but as an extension of time, either without defendants' consent, or without expressly reserving the right of recourse, still defendant has been discharged under the provisions of our negotiable instrument act.

Compiled Laws, 1921, section 3937 reads: "A person secondarily liable on the instrument is discharged: First— By any act which discharges the instrument; Second—By the intentional cancellation of his signature by the holder; Third—By the discharge of a prior party; Fourth—By a valid tender of payment made by a prior party; Fifth— By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; Sixth—By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

Plaintiff discharged the original note and created a new

and distinct obligation: different in amount, the original having been reduced by part cash and part new notes; different as to parties, defendant's name being absent on the new paper; different as to maturity, having been changed from payable on demand to ten years from date, and different as to defendant's rights and remedies as indorser and against the principal maker.

Counsel for plaintiff points out that it is the contract of February 6, 1919, that is being sued upon, not the original Foutz note, but the note is the part of the contract that plaintiff is attempting to have enforced, which brings it back to the same point, that the measure of liability consists of the rights of the parties under the Foutz note. Plaintiff's remedy must be commensurate with her rights. Plaintiff's contention that she is not suing on the Foutz note merely emphasizes our previous statement that the contract to be affirmed is the one that was made, if it was made at all.

Defendant's status has been altered by plaintiff, another reason why she cannot recover. Plaintiff's counsel contend that she had the right to use the Foutz note as she pleased after she took it, frankly and fairly adding, *"providing she did nothing to cause the indorser to change his position to his prejudice."* (The italics are ours). But this is just what she did.

It is unnecessary to enumerate the rights and defenses in an action by plaintiff that have been lost to defendant as indorser by plaintiff's own acts. It is sufficient to say that defendant has been deprived of them all by such acts and by treating him as primarily liable instead of secondarily so.

Defendant has also lost his right to recover from the principal by plaintiff's acts. Under C. L. 1921, section 3938, it is provided that "where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, * * * ." If the judgment should stand, defendant will have paid twenty-five

thousand dollars of his principal's debt, but the note having been cancelled, marked paid, and returned to the maker, defendant can recover nothing against such maker. Indeed, even if he had the right to recover, it has been rendered worthless to him by plaintiff's causing Foutz's chief assets to be hypothecated to herself to pay the new notes in her own favor, assets that otherwise would have been available to defendant under execution against Foutz, but are not so now.

If the judgment be sustained, plaintiff will have the right to still recover the full amount of the new notes, besides the cash paid, all equal to the original obligation, in addition to the amount of the judgment. Predictions have been offered that they will not be paid. These prophecies may or may not be fulfilled, but we cannot give heed to them. Assuming that defendant might have been willing to become an unconditional indorser on a demand note, this does not signify his assent to be an indorser on a ten year note with the maker's property hypothecated to secure another person, nor on any note other than one payable on demand. Our province is to construe and define the contract between the parties as made. Courts have no right to force an agreement upon a party that he did not make, and that it is not even alleged that he made.

The court must give effect to all parts of the contract. The agreement cannot be both affirmed and denied. By choosing to sue for damages, plaintiff affirmed the contract in toto. She cannot accept its benefits without its burdens, nor ratify in part and disaffirm in part. *Cole v. Smith*, 26 Colo. 506, 58 Pac. 1086; *Cattell v. Denver State Bank*, 75 Colo. 150, 225 Pac. 271.

Plaintiff's counsel argue as to the inventory valuation of the Aspen store as affecting the value of the Foutz note. Such inventory valuation was determined by the parties themselves when they made their contract on February 6, 1919, which is the valuation to be accepted. It is said that there was a subsequent business depression in the mining town of Aspen, where the store is located, but

this had no bearing on the previous contract of the parties. It would be as proper for the jury to change the agreement of the parties the other way if a mining boom should strike the camp.

The argument works both ways from another angle. If it be true, or if it were relevant, that the lapse of time, a subsequently depleted stock of goods, business reverses, or other causes have brought about a depreciation in the value of the Foutz paper after it was executed, then by the same token the defendant has been equally injured. In fact more so, because the right that would have accrued to him as indorser to recover from Foutz as maker, upon payment by such indorser of all or part of the maker's note, has not been merely postponed by plaintiff in taking new notes from Foutz and his associates that will not be due until the year 1929, but as we have pointed out, plaintiff has completely destroyed the possibility of defendant's ever reimbursing himself.

We must conclude that the judgment is not sustained by the evidence and that even if plaintiff suffered the loss she claims by reason of defendant's acts, which is conjectural, nevertheless she is precluded from recovery by her subsequent conduct to defendant's detriment.

The case has been tried twice and ought not to be tried again, because under the evidence as we view it, plaintiff is not entitled to recover, either in tort or upon contract. The judgment is therefore reversed and the cause will be remanded, with directions to the trial court to give judgment on the merits for defendant.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE BURKE concur.