[Civ. No. 1631.   Third Appellate District.—January 20, 1917.]

EDWARD CARLSON, Appellant, v. FARM LAND INVESTMENT COMPANY (a Corporation), Respondent.

ACTION FOR RESCISSION—CONTRACT FOR PURCHASE OF REAL PROPERTY—FRAUD—PLEADING—FRAUDULENT INTENT—INSUFFICIENT COMPLAINT. In an action to rescind a contract of purchase of real property on the grounds of fraud and deceit, and for the recovery of damages alleged to have been sustained by the plaintiff, the complaint is insufficient, where it is not alleged that the representations concerning the property were made with intention to deceive the plaintiff, or to induce him to make the purchase to his injury.

APPEAL from a judgment of the Superior Court of Yuba County.   K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

Curtis Hillyer, and Wetmore & Davies, for Appellant.

A. A. DeLigne, and W. H. Carlin, for Respondent.

PLUMMER, J., *pro tem.*—Plaintiff appeals from a judgment entered in the lower court dismissing the action herein for failure to file an amended complaint as allowed by the order of the trial court after sustaining a demurrer to the plaintiff's first amended complaint.   The action was begun by the plaintiff to secure a decree rescinding, on the grounds of fraud and deceit, a contract of purchase for a tract of land comprising between eight and nine acres situated in Arboga Colony, county of Yuba, state of California, entered into between the plaintiff and defendant on or about the fifteenth day of October, 1912, and for the recovery of damages alleged to have been suffered by the plaintiff.

The demurrer to the complaint was both special and general, and was sustained by the lower court with leave to amend, which was not done.

The complaint shows that the plaintiff, a Swede by birth, a farmer by occupation, was, prior to the tenth day of October, 1912, a resident of the state of Michigan, of the same religious faith as one Hallner, living in Sacramento, in the state of California, a pastor of a church of the same faith as plaintiff; that on or about the first day of October, 1912, a letter was received by the plaintiff from said Hallner in reference to the Arboga Colony and its desirability as a place of residence.   As this letter is made the foundation of the complaint, is annexed thereto, and made a part thereof by proper references, the sufficiency of the complaint must, in large measure, be determined by the contents of the letter. The letter is as follows:

"Concerning Arboga Colony.
"Dear Brother in the Lord:
"Grace and Peace.
"It seems to be my duty to say a few words regarding Arboga Colony.   I have myself looked over the ground and have myself made inquiries about it.   Therefore I know

what it contains. When I 9 years ago wrote up Turlock, I was abused, criticized by a great many. But they now must all acknowledge that I understood the case better and that I had a clear view of the future than those of my belligerent friends who criticized me at the time. My sole purpose at the time was to get together a great Swedish colony and a strong Missionary movement. And I believe it must be admitted that we succeeded therein. I have now allowed myself to be persuaded to participate in the foundation and development of the Arboga Colony. And I am positive that it will succeed just the same as it succeeded in Turlock, sandstorms, grasshoppers and criticisms notwithstanding. It will succeed because God the Creator has ordained that the earth shall be filled and inhabited of people who will overcome and rule her (1 Mos. 1, 28). It must succeed because our purpose is the preservation of God's children in the faith and upbringing of the children in Christ and the faith of the fathers, and a vigorous missionary activity, which cannot be attained if our people are divided into small groups here and there. Think beside how costly missionary work is.

"Other conditions are much better in Arboga than they were in Turlock. A great quantity of potatoes was recently harvested, the largest and finest I have ever seen. All bearing witness to its extraordinary fertility.

"There we also find water transportation, lakes and fishing, for business as well as pleasure, in the neighborhood and also a good market and splendid communications. Our good land company has by means of restricting clauses in contract and deed shut out the liquor traffic and saloon keeping, as well as 'nuisances,' or in other words all that contend to degrade or lower the morals of the community.

"Just think what a great advantage this is; where have such opportunities ever been given to our people before? Can one imagine a place more fitted for homes for families and raising children? Moreover good milk cows are furnished free to new settlers who cultivate and live in their homes in such a way that half of their income from the cream is credited toward the payment of the cows. Mr. J. M. Henderson, Jr., cashier of the Sacramento Bank (which has 11,000 depositors with a combined capital of $6,210,539.97), is one of the largest owners. I have been acquainted with him for 17 years. No father or brother could have done more for our

Swedish folk in and around Kingsburg and Riverside than he has done. He has been tried and found to be a true friend. It is therefore quite natural that I feel safe because I know that our people will be well treated and taken care of in Arboga. As far as the price of the land is concerned, it is cheap in proportion to the fertility of the soil and location.

"It is cheaper here at from $75 to $150 per acre than Turlock property was at from $25 to $32.50 per acre. I also believe that one can begin with the same capital here as there, but the prospect for himself and family for the future is far pleasanter.

"Finally, let me assure you that I have no connection with nor interest in the land company, nor have I received any allowance on the land I have bought, for which I have paid the same price as all others, but I do this out of pure interest for the Swedish people and for our mission.

"I believe in systematic colonizing by gathering our Swedish people in large Swedish communities, because it is better for them and better for the missionary activities, but not only that, our people will be protected against exploiters and schemers who will not stop extolling poor land for the sake of personal gain without the slightest possible care for the buyer's loss or ruin.

"I have already been requested to prepare plans as well as to produce drawings and the estimate for our meeting house or church, if one would so call it, and the building of which will take place in the near future.

"Preparations have accordingly been made to take care of both the colonists' temporal and spiritual welfare, which we, as Swedes and friends of the mission ought to duly appreciate.

"(Signed) A. HALLNER,<br>
"Sacramento Bank Bldg.,

"March 1st, 1912.                    Sacramento, Cal."

The complaint then alleges "that in and by said letter said Hallner falsely pretended and represented to plaintiff:

"(A) That said land so offered for sale to plaintiff was of a character greatly superior to the land about Turlock, California.

"(B) That said land was a better bargain at $75 to $150 an acre than similar land at Turlock at $25 to $32.50 per acre.

"(C) That said land was of extraordinary fertility.

"(D) That a great quantity of potatoes had been recently harvested on said land, which were the choicest and finest ever seen by said representatives.

"(E) That said Hallner was not in any way financially interested in the sale of said land, and that the interest of said Hallner arose from his desire to get together a great Swedish colony, and promote a strong missionary movement."

That at the time said representations were made by said Hallner in said letter, said Hallner was an agent and employee of said defendant; that in said letter said Hallner fraudulently concealed from plaintiff the fact that said land was worthless and of no value, and that it was known as overflow land; and that there was present in it certain "hard-pan," located at such distance from the surface that it was impracticable to drain the same of water so as to permit the profitable growth of plants and trees.

It is further alleged that the defendant, by means of advertising circulars sent by defendant to plaintiff, "falsely pretended and represented that there was no hard-pan in any of defendant's land so offered for sale; that said defendant in said circulars likewise fraudulently concealed from the plaintiff the fact that there was hard-pan on said lands at such distance from the surface that it was impracticable to drain the same so as to permit profitable growth and culture of plants and trees; that an advertising circular was sent by defendant to plaintiff and received by plaintiff, reproducing as a part of said circular a photograph of a hop ranch, located near Wheatland in the county of Yuba, containing a picture of said Hallner in the foreground thereof, and said defendant falsely pretended and represented in said circular that said hop ranch was located in Arboga Colony; that another advertising circular was also sent by defendant to plaintiff, reproducing a photograph of an alfalfa field located near to the tract of land offered for sale by defendant, but not a part of said tract of land; and said defendant falsely pretended and represented to plaintiff in said circular that said alfalfa field was located in Arboga Colony."

It is further alleged that the plaintiff closed up his business in the state of Michigan, came to the state of California on or about the fifteenth day of October, 1912, was met by the said Hallner, who took charge of him and acted as friend and adviser, both business and spiritual. That the plaintiff relied

implicitly upon said Hallner as such adviser, and believed him to be entirely actuated by spiritual motives, etc.

It is further alleged that upon the plaintiff's arrival at Arboga, defendant, through its representatives, exhibited the land referred to, while the same was free from overflow and during the dry season, and repeated the representations previously made by defendant, as aforesaid, prior to plaintiff's arrival, and continued to conceal the existence of the facts so concealed, and such false representations and such fraudulent concealments then and there made by defendant and its representatives were as heretofore stated, repeating in substance and with almost identical language the allegations hereinbefore set forth; and further alleging "that plaintiff was totally ignorant of the existence of the facts and entirely unfamiliar with swamp and overflow lands; that said representations so made by the defendant and its representatives both before and after the arrival of the plaintiff at Arboga, were false, as defendant and its representatives then and there well knew.''

It is further alleged that the plaintiff did not discover the falsity of the alleged representations until during the winter of 1913–14, when the lands referred to were flooded by the high waters of that season, whether by breaking the levees referred to in the complaint, or otherwise, does not appear; and by reason of the flooding great damage was suffered and the lands rendered entirely unfit for the purposes for which they were falsely represented to be fit. It will be seen by the allegations of the complaint that reliance was placed by the plaintiff upon the *representations made by Hallner*, and *not* upon anything said or done by any other representative of the defendant. While it is alleged that other representatives made similar statements, and that circulars were sent by the defendant to the plaintiff, the complaint is entirely silent as to any confidence being placed therein by the plaintiff, or that he made any purchases on account of any such representations. The complaint is also silent as to whether the representations made by Hallner in his letter were actually known by him to be false, or were in truth and in fact false, other than by way of mere recital. The language of the complaint is "that in and by said letter said Hallner falsely pretended and represented to plaintiff, etc.'' The pleader, by paragraph VIII of his complaint, after stating that different

representatives of the company had made certain representations, uses the following language: "That said representations so made by defendant and its representatives, both before and after the arrival of the plaintiff at Arboga, were false, as defendant and its representatives then and there well knew." This is not a direct allegation that anything said or written by Hallner was either false, or known by him to be false. The special demurrer calls direct attention to this defect. An analysis of the letter shows that the principal purpose of the writer was the building up or founding of a Swedish colony of his own religious faith. This is not alleged to be either false or fraudulent. After speaking of the conditions in Arboga, the letter states "à great quantity of potatoes was recently harvested, the largest and finest I have ever seen, all bearing witness to its extraordinary fertility." From all that appears in the complaint, Arboga Colony may have produced a large quantity of potatoes, and of a quality asserted by Hallner. The language of the complaint is, "that a great quantity of potatoes had been recently harvested on said land." This is not an allegation that such potatoes were not raised in Arboga Colony; it is, at most, only an allegation that they were not raised on the small tract bargained for by the plaintiff. The letter further states that market communications are good; this is not denied; that the deeds to the different tracts in Arboga Colony contain stringent clauses restricting the liquor traffic. The truth of this statement is not questioned. Then follows a reference to what one J. M. Henderson, of Sacramento, has done for the Swedish people. Upon this question the complaint is also silent. A comparison is then drawn as to the respective values of land in Turlock, California, and lands situate in the Arboga Colony. There is nothing in the complaint showing that this statement was not made in good faith, and, when carefully analyzed, whether such statement is not in fact true. The letter then concludes with the statement of the writer's belief in the advisability of colonizing and gathering the Swedish people together in large communities; that the writer had been requested to prepare plans for a Swedish meeting-house or church. There is nothing in the letter, nor is there anything in the complaint, from which the trial court could infer that Hallner knew anything about any hard-pan underneath the lands in Arboga Colony, or from which it can be inferred that Hallner was fraudu-

lently or otherwise concealing such fact, if it be a fact.  Nor is there anything in the complaint, or in the letter, from which the trial court could infer that Hallner was concealing from the plaintiff that the lands involved are worthless or of no value, if such be the fact.  The language of the complaint in this particular, in the first instance, is as follows: ''That in said letter said Hallner fraudulently concealed from plaintiff the fact that said land was worthless and of no value.''  And further on, as a basis for charging the valuelessness of the lands, the complaint alleges: ''That said land was inundated from flood-waters to the plaintiff's great damage, rendering the same entirely unfit for the  purposes for which it was falsely represented to be fit, as aforesaid.''  This is not an allegation that the lands were otherwise than as represented by Hallner, or that they are not, in fact, both valuable and fertile; nor is there any allegation in the complaint alleging the actual existence of hard-pan underneath the lands described therein, the nearest approach being the statement that said Hallner concealed from plaintiff that there was present in it certain hard-pan located at such distance from the surface that it was impracticable to drain the same.  If such were, in fact, the case, there might be ''certain hard-pan'' in the land, and yet the tract, as a whole, still fertile and valuable.

Much time and space has been occupied by counsel in their briefs touching the question as to when an expression of opinion may be regarded as equivalent to a statement of a fact and rescission granted, but from the analysis of the complaint and the letter upon which it is based, as hereinbefore set forth, it does not seem to the court necessary to review a long list of authorities on questions which are not disputed.

The real point involved in this action is decided in the case of *Baker-Boyer National Bank* v. *Hughson*, 5 Wash. 100, [31 Pac. 423].  The court there says: ''The simple statement that such representations were false and fraudulent, in the absence of any statement of what the real facts were, is a simple conclusion of law, and no issue of fact could be made upon it.''  That the mere expression of opinions by a vendor is not such a misrepresentation as might avoid a sale, even although such opinions are not warranted by the facts, is too well established to require the citation of authority.  The allegation in that case was as follows: ''That it was falsely and fraudulently

represented that said real estate was situated,'' etc.   Here, it is not pretended that Hallner fraudulently represented anything, it being alleged only that he falsely represented and pretended.   This language does not include any element of willfulness or lack of good faith on the part of the person making the representation, or that the truth is actually different from such representations.

In the case of *Spreckels* v. *Gorrill,* 152 Cal. 383, [92 Pac. 1011], the language of the complaint was, ''falsely and fraudulently,'' but the court points out, on page 386 [152 Cal.] that no special demurrer was interposed, and says: ''If the objection had been raised by special demurrer for uncertainty, perhaps it might have been held fatal, but no demurrer was filed to the complaint; the defendant answered, denying practically all the substantial allegations of the complaint, and the case was tried upon the theory that the complaint was sufficiently direct and positive.''   The court further says: ''The lack of a direct allegation that the statements were untrue, conceding it to be a defect, is one of that character which, in the absence of a special demurrer, is cured by the verdict of the jury or the findings of the court, and which cannot be taken advantage of when urged for the first time on appeal.''   And further, the same rule applies to the defect of allegation of fraudulent intent on the part of Gorrill. While the allegation that he made the statements falsely and fraudulently to induce Spreckels to buy, might not in the face of proper special demurrer supply the place of a direct allegation that Gorrill knew them to be untrue, or made them in a manner not warranted by his own information, although he believed them to be true, nevertheless it implies all this, and where no special demurrer is interposed, it will be held sufficient after the verdict or decision upon the merits.''

In that case it was alleged that the representations were made falsely and fraudulently and with intent to deceive. In the case at bar, it is only when Hallner falsely pretended and represented without any fraudulent intent; and, so far as the complaint goes, without any purpose to deceive or mislead the plaintiff in any particular.   The trial court upon demurrer held ''that it was not alleged in the complaint that the false statements were made with intent to deceive the plaintiff or induce him to make the purchase to his injury,'' citing Sutherland on Code Pleading, sec. 6886; *Barber* v.

*Morgan,* 51 Barb. (N. Y.) 116; *Heller* v. *Dyerville Mfg. Co.,*
116 Cal. 127, 133, [47 Pac. 1016]. And further, that there
was no allegation in the complaint that the plaintiff had, in
fact, been injured by reason of his purchase, citing *Truett* v.
*Onderdonk,* 120 Cal. 581, 588, [53 Pac. 26]. This defect in
the complaint further appears by reference to 12 Ruling Case
Law, section 167, where it is stated, "fraudulent intent must
be alleged in all cases where it is a material ingredient of a
fraud relied on. In an action of deceit, it is proper to allege
facts showing knowledge on the part of the defendant that his
representations were false, and generally in such an action
scienter must be alleged either expressly or by alleged facts
which are tantamount thereto. It must also be alleged that
the representations were made with a fraudulent intent, and
for the purpose of inducing the other party to act on them.
In all cases where the representations relied on relate to mat-
ters of opinion, it must be alleged that they were knowingly
false, and were not honestly given." Nothing of this kind
appears in plaintiff's amended complaint. If the necessary
facts existed to constitute a cause of action, the trial court
allowing twenty days within which to file a second amended
complaint, provided ample time.

We are of the opinion that the defendant's demurrer to
plaintiff's amended complaint was properly sustained, and
that the judgment of the lower court should be affirmed. It
is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on March 19, 1917, and the following
opinion then rendered thereon:

THE COURT.—In denying the petition for a hearing in
this court after decision by the district court of appeal of the
third appellate district, we deem it proper to say that we do
not desire to be understood as approving everything stated in
the opinion of that court.

It seems to us that there can be no question of the correct-
ness of the action of the trial court in sustaining the demurrer
on the ground, among others, that it was not alleged in the

complaint that the false statements were made with intention to deceive the plaintiff or induce him to make the purchase to his injury.

This being so, the judgment of that court would have to be affirmed in any event.