# September Term, 1917

## No. 8610.

### MCNULTY v. DURHAM.

DECEIT—*Evidence.* One who demands damages for false representations by which he was induced to part with his property, must establish, both the falsity of the representation, and his reliance thereon.

Plaintiff was induced to exchange real property situated in Colorado for land situated in Missouri.

The defendant produced to him an abstract of the title to the Missouri land showing a perfect title in one Oldham.

Upon this plaintiff conveyed his property in Colorado to defendant, and accepted a conveyance from Oldfield. In fact the abstract was not a truthful exhibit of the title, and plaintiff obtained nothing by the Oldfield conveyance; but there was no evidence that defendant had any part in the preparation of the abstract, or the false certificate appended thereto, or knew of its falsity, or represented that he knew it to be a true abstract. Judgment for plaintiff reversed.

*Error to Pueblo District Court, Hon. J. E. Rizer, Judge.*

Mr. R. R. CLOUD and Mr. S. S. PACKARD, for plaintiff in error.

Mr. D. M. CAMPBELL and Mr. S. R. DURHAM, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

THIS action, brought by S. R. Durham, as plaintiff, against Charles N. McNulty, is based on fraud and deceit—alleged misrepresentations—of McNulty, in an oral contract for an exchange of real estate by which Durham gave his house and lot in Pueblo, to McNulty for a tract of land in Christian county, Missouri. Durham was a

practicing attorney in Missouri before coming to Colorado. Defendant was a merchant in the city of Ordway, and the parties were brought together by one Kidder, a real estate agent.

The complaint alleges that September 19, 1913, McNulty represented to plaintiff that he owned a farm of eighty acres, in Christian county, Missouri; that he had fee simple title, free and clear of all encumbrances, taxes or other liens, and exhibited an abstract of title in usual form, certified as containing a correct and complete abstract of everything affecting the title; that the last certificate, dated April 28, 1913, certified that the taxes were paid in full, and showed a clear and perfect title to the property in one William Oldfield; that defendant produced and exhibited a warranty deed executed by Oldfield, with a blank space left in which to write the name of the grantee, and represented that he had purchased the property from Oldfield, and received the deed with full authority to write or have written in the name of any grantee he might wish; that defendant said he had not seen the property himself; and proposed to exchange it for plaintiff's equity in the Pueblo house and lot, which was worth $1,250.00; that defendant guaranteed the farm was as represented, and that no liens had attached since making the abstract; that plaintiff upon inquiry ascertained that defendant was a reliable merchant and business man of Ordway, and believing and relying upon the truthfulness of his statements and representations as to the character and title of the farm, as well as upon the genuineness and bona fides of the abstract, he, plaintiff, was induced to make and did make the exchange, by delivering a warranty deed of his equity in the Pueblo property to the defendant, and receiving in exchange therefor the deed executed by Oldfield. It is then alleged that at the time of the exchange defendant had no claim, right, title or interest in or to any part of the Missouri farm, neither did Oldfield at the time he executed the deed; that the abstract was in two parts, the first being made by an abstractor named Adams, and the certificate being dated

July 17, 1902; that the second part consisted of one certificate as follows:

"No sheets have been added to this abstract since the above date. No other conveyances, judgments or liens of record since said date except as herein set forth. Taxes paid in full.

Witness my hand this 28th day of April, 1913, at 4:15 o'clock p. m.

Henry C. Pratt,
Abstract Maker."

that this last certificate was fictitious, untrue, false, fraududent and a forgery, designed and exhibited for the purpose of cheating and defrauding plaintiff; that there was no such abstract maker as Henry C. Pratt in Christian County, Missouri, at that or any other time; that in fact between July 17, 1902, and April 18, 1913, the land had been sold for taxes to one Cobb, who became the owner by virtue of tax sales; that plaintiff did not discover the fraud practiced upon him until December, 1913, when he was informed that the land had been sold for taxes, and was owned by Cobb; that defendant in making the alleged false representations, was guilty of malice, fraud, and willful deceit; that defendant has not been prosecuted nor convicted in a criminal proceeding or action for the wrong, malice, fraud and willful deceit so perpetrated upon plaintiff, nor is any criminal action pending against him on account thereof, and plaintiff offers to return the deed, and prays damages in the sum of $1,250.00, and $500.00 exemplary damages, and for a finding, decree and judgment that defendant was guilty of malice, fraud and willful deceit in the statements and representations made and held out to plaintiff as to the character and extent of his title to the Missouri farm, and in exhibiting a false abstract of title thereto; that upon such finding, judgment, order and decree, plaintiff have a body execution against defendant upon which he may be committed to jail as provided by law.

The court instructed the jury that plaintiff based his claim for damages upon the ground that he was induced

to enter into the exchange by fraud and false representations on the part of the defendant; that plaintiff claimed at the time the trade was made that defendant represented to him that he, defendant, had a good title to the Missouri farm and there were no liens outstanding against it except as shown by the abstract; that defendant in fact had no title to the property, that it had been sold for taxes prior to the exchange, and that some person other than defendant owned it, and that the plaintiff got nothing by the trade; that defendant in his answer admitted making the trade, but denied that he made any misrepresentations in reference to the title; and the jury were instructed that if they found from the evidence on the trial that defendant represented to plaintiff that he was the owner of the Missouri farm, and produced and furnished what purported to be an abstract of title, and further found from the evidence that plaintiff relying upon the truthfulness of these representations and the correctness of the abstract, was induced to and did convey to defendant his property for the deed to the Missouri farm, and made the exchange without investigation, relying upon the truthfulness of defendant's representations, and further found that at the time defendant made said representations, if he made them, and produced such abstract, and at the time of the exchange, the representations made by defendant, if he made them, were false and that he had no title to the Missouri farm, and conveyed none to plaintiff, and that defendant at the time of making the representations knew them to be false, or made them without knowing them to be true, with the intention of having plaintiff rely upon their truthfulness, then they should find for plaintiff, and assess his damages at whatever sum they might find from the evidence was the reasonable value of the Pueblo property; that if they found, however, from the evidence, that the defendant made no such representations to plaintiff as to the title of the Missouri farm and that the contract was entered into by both parties, each having fairly represented his property to the other, then the verdict should be for the defendant. The jury returned the following verdict:

"We the jury find the issues herein joined for the plaintiff and against the defendant, Charles N. McNulty, and assess his damages in the sum of $375.00."

The court disregarded the verdict and entered judgment *non obstante veridicto* in the sum of $1,220.00.

Plaintiff and his son were the only witnesses for plaintiff, who testified to the transaction. Plaintiff testified: September 19, 1913, exchanged with McNulty my house and lot in Pueblo for the eighty-acre farm in Missouri; my equity was worth $1,250.00; he told me the Missouri farm was 25 miles from Springfield; said he had never seen it and knew nothing about it personally; that it was free and clear of all encumbrances; that he had a deed in blank from Oldfield, and when we traded simply put in my name as grantee; I examined the abstract he gave me at that time, and relied upon it; about December 20, 1913, I learned that the land had been sold for taxes; the property when it was exchanged to me had been sold for taxes against Oldfield before the last certificate on the abstract; the title in fact stood in Cobb; the first certificate to the abstract was made by Adams in 1902, the last entry of which shows the property was deeded September 17, 1901, to Oldfield; the Pratt certificate, made April 20, 1913, shows no entries, and certifies that the taxes were paid; in this regard it does not state the truth; the land had been sold, after it was conveyed to Oldfield, for taxes; Kidder got to talking with my boy about trading, and he and McNulty came to my office one morning together, and proposed a trade; I said: "I will have to investigate before we talk." Kidder had asked me before if he could not sell my property. I said: "If you find a purchaser, it is all right"; never had seen McNulty before; we didn't make the trade then; they came back in the afternoon and we traded; when they came back they had an abstract which they showed me, and Kidder says: "You know enough about Missouri that land within 25 miles of Springfield could not be worth less than $25.00 an acre." I said: "Yes, I know that." McNulty guaranteed that everything was all right, and that the abstract showed a clear title; we went

ahead and made the exchange and I received the deed he had at that time from Oldfield to the Missouri farm, and deeded him my Pueblo property.

Plaintiff's son testified: McNulty said he would like to trade that land in Missouri for the equity; Kidder had been in and out of the office several times before, regarding the trade; he introduced McNulty, who said he had never seen the land; they came first in the morning, and Kidder took McNulty out to look at the house, and they came back in the afternoon; McNulty stated the abstract showed a clear title, free from all encumbrances with taxes paid to date, and handed it to father to examine and left it with him.

Plaintiff then introduced in evidence the abstract of title and certified copies of the record of tax sales in Missouri showing that the land had been sold for taxes three different times subsequent to the Adams certificate, and before the date of the Pratt certificate, and rested.

Defendant testified that he told plaintiff he received the deed and abstract in a trade, and had never seen the land and knew nothing about it, or the title, personally. This was not denied. He said: "I told him positively, both he and Kidder, that I did not know anything about the Missouri land personally; that I had never seen it and knew nothing about it myself; I showed him the papers and told him if he wanted to trade, it was all right with me."

Garrigues, J., after stating the facts as above:

1. The cause of action is not based upon guaranty, or warranty, or failure of title; but upon fraud and deceit, and we are controlled by the established law and decisions in this jurisdiction relating to fraud and deceit actions. McNulty had in his possession a deed to the property, executed by Oldfield, with no grantee named therein. When they traded, Durham's name was written in the blank space and the deed and abstract delivered to him in exchange for a deed to the Pueblo property. Plaintiff testified that he examined and relied upon the abstract. He knew that McNulty had never seen the property and knew nothing about it or the title, personally. According to the abstract, the

title was in Oldfield and all taxes paid. The trade was in September, and plaintiff testified that in December, he learned that Oldfield had owned the property but that it had subsequently been sold for taxes. The abstract showed that Oldfield obtained title in 1901, which was the last entry, and while the Pratt certificate stated that the taxes were paid, the records of the county showed the property had been sold for taxes prior to the date of the Pratt certificate, therefore it did not speak the truth. There is not a particle of evidence that the certificate was forged or fictitious. There was no evidence and no attempt to show that the statements of defendant regarding the property, its value or condition were untrue.

The complaint sets forth the representations made and alleges that they were untrue; that McNulty, when he made them knew they were false; that plaintiff was ignorant of their falsity; that McNulty intended that plaintiff should rely upon the false representations and that plaintiff believing them to be true, relied and acted upon them to his damage. No objection can be made to the complaint. It states a good cause of action based upon fraud and deceit. Had the evidence sustained the allegations of the complaint, the instructions would have been appropriate and plaintiff would be entitled to recover; but merely alleging a cause of action without proof, does not entitle one to recover, any more than charging one with murder, establishes his guilt. Plaintiff charged that defendant represented that he owned an improved eighty-acre farm, forty-five acres of which was in cultivation, on which was a four-room house and outbuildings, a family orchard, a spring of running water, and that the land was worth twenty to twenty-five dollars an acre, and that these representations were false. But he introduced no evidence whatever to show that any one of these representations was untrue. Neither is there any evidence that Pratt was not an abstractor, or that the Pratt certificate was either fictitious or a forgery. It certified that the taxes were paid, and in this regard was untrue. Plaintiff's proof on the trial went no further than to show

that he failed to obtain title through the Oldfield deed on account of the land having been sold for taxes. He proved failure of title and rested, without introducing evidence to support the cause of action pleaded upon which issue was joined and upon which the court instructed the jury. In defining the issue, the court should not have stated the cause of action upon which there was no proof. It is only the ultimate issue that should be presented to the jury. If there is no evidence to sustain a matter pleaded, it is no longer an ultimate issue. In *Fort Lyon Canal Co. v. Bennett*, 61 Colo. 111, 156 Pac. 604, it is said:

"The court in its instructions, defining the issues, afforded an opportunity for prejudicing the defendant's case before the jury. It is the duty of the court in a jury trial to define and settle the ultimate issues remaining in the case as they appear at the time it is given to the jury. Submitting to the jury in detail all the allegations disclosed in the pleadings, whether or not they are finally for its determination, is unnecessary and improper, and might in some cases be prejudicial. Without some good reason it is safer for the court not to inform the jury of matters contained in the pleadings which constitute no issue for their consideration and determination as the case is finally submitted. *Cook v. Merritt*, 15 Colo. 212, 25 Pac. 176."

2. The verdict must be based upon the issue presented, and the evidence. If the evidence, as a matter of law, does not sustain the verdict based upon the action laid in the pleadings, judgment upon the verdict cannot stand. To recover in an action upon fraud and deceit, the plaintiff must allege and prove all the necessary ingredients going to constitute such an action, and the absence of any one of the ingredients in the pleading or proof is fatal to a recovery. *Sellar v. Clelland*, 2 Colo. 532; *Adams v. Schiffer*, 11 Colo. 15, 17 Pac. 21, 7 Am. St. Rep. 202; *Wheeler v. Dunn*, 13 Colo. 428-436, 22 Pac. 827; *Lahay v. City Nat. Bank*, 15 Colo. 339, 25 Pac. 704, 22 Am. St. Rep. 407; *Zang v. Adams*, 23 Colo. 408, 48 Pac. 509, 58 Am. St. Rep. 249; *Connell v. El Paso G, M, & M. Co.*, 33 Colo. 30, 78 Pac. 677; *Colo.*

*Springs·Co. v. Wight,* 44 Colo. 179, 96 Pac. 820, 16 Ann. Cas. 644; *Kilpatrick v. Miller,* 55 Colo. 419-422, 135 Pac. 780; 12 R. C. L. p. 240, § 10; Id. p. 419, § 166.

In *Connell v. El Paso G. M. & M. Co., supra,* it is said:

"A careful examination of the record in this case discloses that the defendant made no representation whatever as to the location of the discovery shaft of his mine. He merely exhibited to plaintiff a copy of an inaccurate map which had been made by the surveyor general, from which it appeared that the discovery shaft was situate within, instead of beyond, its exterior boundaries. There was no representation by defendant that, of his own knowledge, he knew that the shaft was properly located. Indeed, what defendant produced before plaintiff showed on its face that the original map of which the diagram was professedly a copy, was made by another, and not by him. It also appears that defendant did not speak of his own knowledge upon the subject; and the record is uncontradicted that neither plaintiff nor defendant had any personal knowledge upon the subject at all, and the facts concerning the location of the shaft were as much within the knowledge of one as the other."

Under the foregoing rules, the allegations in the instant case of false representations regarding the title were not established. Plaintiff was not entitled to recover upon a cause of action based upon fraud and deceit merely because the certificate to the abstract did not speak the truth, and he lost the title thereby. All that is needed to make that case apply to this, is to substitute the word "abstract" for "map."

In *Colo. Springs Co. v. Wight, supra,* it is said: That to sustain an action at law for damages based upon fraud and deceit, requires that the fraudulent representations be made up of five elements or ingredients; (a) The false representation; (b) knowledge by the person who made the fraudulent representation, of its falsity; (c) ignorance of its falsity by the person to whom it was made; (d) the intention that it should be acted upon; (e) acting upon it to one's

damage. The necessity of all these elements is essential both as a rule of pleading and evidence. In 12 R. C. L., at page 419, sec. 166, it is said:

"In order properly to plead fraud, a bill, complaint, or answer must contain averments of all the elements thereof. Thus, it must show that the representation made the basis of the charge of fraud was made by the defendant, or with his authority, that it related to a material fact, that it was false, that it was made under such circumstances that the person to whom it was made had a right to rely on it, and that he did in fact rely on it, and that he was damaged in consequence."

And at page 240, sec. 10, it is said:

"The essential elements required to sustain an action for deceit are that the representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage."

In *Kilpatrick v. Miller, supra,* page 422, it is said:

"Tested by this rule, a complaint should allege the facts constituting the false representations made by the defendant; that he knew at the time he made them that they were untrue or gave positive assurance that the representations were true of his own knowledge; that the false representations were made by defendant with the intention and purpose of inducing the plaintiff to act upon them; that the plaintiff was ignorant of the facts and of the false representations; that he believed at the time the representations were made to him, that they were true; that the representations were untrue, and that plaintiff acted upon them to his damage."

McNulty did not claim he had ever examined the title, or that he knew personally anything about it other than disclosed by the abstract. There is no evidence that he knew the representations he made regarding the title were not true, or that he possessed any personal knowledge of

the condition of the title superior to that of plaintiff. He represented that the abstract showed a clear title or a good title, and it did; but there is no evidence that he said he knew personally that the abstract was true. There is not a particle of testimony that he had ever owned the property, or had anything to do with making the abstract, procuring an untrue certificate, or that he knew at the time that it did not disclose the true condition of the title. He did not pretend of his own knowledge to know whether the certificate spoke the truth or not, and there is an entire absence from the record of evidence from which it could be legitimately inferred that he had such knowledge. Plaintiff knew that McNulty had no title, had never owned the farm, had never seen it, and knew nothing regarding it, personally. Such papers as he had, he turned over to Durham— who was an attorney-at-law—for his examination and guidance. Durham testified that he relied upon the abstract, and he knew the condition of the title, as shown by the abstract, was the only information that either of them possessed, the truth regarding the certificate being as much within the knowledge of one as the other. There is no evidence that the source and extent of McNulty's information respecting the title and the property was not as stated, or that plaintiff did not possess the same knowledge regarding it as McNulty.

Under the circumstances, whatever right he may have based upon a proper action, plaintiff cannot recover upon an action predicated upon fraud and deceit.

The judgment is reversed and the cause remanded.

Reversed.

Decision *en banc*.

Mr. Justice Hill and Mr. Justice Scott dissent.