[Civ. No. 2197. Third Appellate District.—December 23, 1920.]

H. G. SMELAND, Appellant, v. HAROLD S. RENWICK et al., Defendants; ANDREW McCORMICK et al., Respondents.

[1] ACTION FOR DAMAGES—OBTAINING OF REAL PROPERTY FOR MORTGAGE BONDS AND CORPORATION STOCK—FRAUD—PLEADING—NATURE OF ACTION.—A complaint charging that the defendants, as officers and directors of a railway corporation, willfully gave and published written certificates, and willfully made and published official printed reports and public printed notices concerning the corporation, its business, financial standing, and assets, which were false and untrue in the following material respects, namely, that the defendants falsely represented and stated to plaintiff verbally and by means of said printed reports and notices that the corporation had sold mortgage bonds sufficient to finish and equip the road when in truth and in fact all of said representations, both oral and printed, were false and untrue, states a cause of action based upon section 316 of the Civil Code, and not one for fraud and deceit under section 1572 of such code.

[2] FRAUD — PLEADING — COMMON-LAW ACTION. — In order to state a common-law action for fraud or deceit there must be more in the complaint than the bare statement that the defendants made certain false and fraudulent representations upon which, believing the same, the plaintiff entered into the transaction from which he thus asks to be relieved or as to which he seeks any appropriate legal or equitable relief, as it must also be charged not only that the defendant knew that the alleged representations were false and untrue at the time that they were made, but that they were made with the intent to deceive and defraud the plaintiff.

[3] ACTION FOR DAMAGES—LIABILITY FIXED BY SECTION 316 OF CIVIL CODE—SCOPE OF EVIDENCE.—Where the complaint in an action for damages for alleged false representations made by corporation officers and directors in obtaining an exchange of real property for bonds and stock shows that the action is based on section 316 of

the Civil Code, evidence tending to establish a case of fraud and deceit under section 1572 is irrelevant, and proof of oral transactions of the corporation bearing upon the subject matter of the action is inadmissible.

[4] ID.—ORAL REPRESENTATIONS OF CORPORATE OFFICERS—ADMISSIBILITY AGAINST OTHERS.—In such an action oral representations or statements made by certain of the officers named in the complaint to the plaintiff relative to the affairs of the corporation are not binding upon the others, unless it is first shown that all of them had corruptly conspired together and entered into a mutual understanding that the representations should by all or any of them be made to the plaintiff for the purpose of inducing him to make the transfer.

[5] ID.—ORDER OF PROOF—DISCRETION NOT ABUSED.—In such an action the court properly exercised its discretion in requiring proof of the falsity of the alleged representations and of their having been made by an officer of the corporation before admitting proof of the plaintiff's alleged damage.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. H. Carpenter for Appellant.

Louttit & Stewart, A. L. Levinsky, C. E. Fleming, Nutter, Hancock & Rutherford, O. B. Parkinson, C. C. Case and Scott Rex for Respondents.

HART, J.—This is an appeal by the plaintiff from a judgment entered upon an order granting a nonsuit upon a motion made immediately upon the close of plaintiff's case.

The defendants, with the exception of defendant Frank V. Smith, were directors of a corporation designated and known as the "San Joaquin Valley Electric Railway," which was incorporated on October 3, 1908, under the laws of this state and remained in existence as such until March 1, 1913, when, according to the complaint, its charter was duly declared forfeited because of its failure to pay its corporate license tax, as required by law, for the year 1912. The defendant, Smith, was secretary of said corporation.

The object of said corporation was, so the complaint states, to build and operate a railroad from the city of Stockton, in San Joaquin County, to the city of Modesto, in Stanislaus County.

The purpose of the action is to recover from said defendants damages in the aggregate sum of thirteen thousand four hundred dollars for obtaining from the plaintiff certain real property of the alleged value of eleven thousand four hundred dollars in consideration of certain mortgage bonds and common and preferred stock of said corporation upon alleged false and fraudulent representations by said defendants with regard to conditions then existing as to said corporation and the progress it had made in the construction of the road, the securing of a franchise, the securing of a lease from another railroad company, and the sale of sufficient bonds of said corporation to enable it from the proceeds of such sale to fully furnish and equip its said railroad from Stockton to Modesto.

The defendants Salmon, Rothenbush, Latta, and Mc-Cormick filed answers to the complaint, putting in issue all the material allegations thereof. The defendant Renwick also filed an answer, but did not appear at the trial. Brackett, Covert, and Smith, the other defendants, were not served with process, and did not appear.

The trial court excluded on objection and struck out on motion certain testimony proposed and presented by the plaintiff, and the action of the court in doing so as well as its order granting the nonsuit constitute the bases of the complaint urged on this appeal against the legal stability of the judgment.

The solution of the question whether there is just legal ground for complaint against the rulings above referred to is contingent upon the determination of the nature, technically, of the action, as to which proposition the parties are in controversy and entertain and advance on this appeal variant views.

The defendants contend, and upon that theory the case was tried by the court below, that the action is based upon section 316 of the Civil Code, which reads as follows: "Any officer of a corporation who willfully gives a certificate, or willfully makes an official report, public

notice, or entry in any of the records or books of the corporation, concerning the corporation or its business, which is false in any material representation, shall be liable for all the damages resulting therefrom to any person injured thereby, and if two or more officers unite or participate in the commission of any of the acts herein designated, they shall be jointly and severally liable."

The plaintiff vigorously urges here that the complaint states both a cause of action founded on the above statute and a cause of action for fraud and deceit. (Civ. Code, sec. 1572.)

[1] We doubt not that it must be held that the action is based entirely on the statute. The very language of the complaint, it seems to us, admits of no other conclusion. It is true that the complaint contains, as we shall presently see, a few statements which might be taken as an attempt to state a common law action to recover for fraud and deceit, but that pleading wholly fails to measure up to the requirements for the statement of such a cause of action.

The charging words of the complaint are as follows: ". . . that on and prior to the said 30th day of January, 1912, the said defendants, as such officers and directors of said corporation, willfully gave and published written certificates, and willfully made and published official printed reports and public printed notices concerning the aforesaid railway corporation, its business, financial standing, and assets, which were false and untrue in the following material respects, namely: That on and prior to the said 30th day of January, 1912, the said defendants, as such officers and directors of said corporation, falsely represented and stated to plaintiff *verbally* and by means of said printed certificates, officially printed reports and printed public notices, to which their names as such officers were appended, attached and printed, that the said railway corporation had sold mortgage bonds of said corporation to the amount of six hundred and twenty thousand dollars, and that the proceeds of such sale were sufficient to finish and fully equip its said railroad from Stockton to Modesto, which was then only partially graded, and put the same in operation and in a condition whereby

it would, and could, earn dividends of 15 per cent on its common stock; when in truth and in fact all said representations, *both oral* and in said certificates, official reports and public notices, made and issued by said defendants as such officers and directors, were then and there false and untrue.''

It seems to us that no more fitting language could be employed than the above to state a case of fraud under section 316 of the Civil Code. Indeed, it will be noted that the above language of the complaint is substantially the language of said section. It is, however, the words italicized in the above excerpt from the complaint, to wit, ''falsely represented and stated to plaintiff *verbally*,'' etc., and ''when in truth and in fact all said representations, both *oral*,'' etc., which the plaintiff assumes constitute a sufficient predicate for a just contention that he relied upon and pleaded in his complaint both the statutory and the common-law action for fraud, as the cause for the latter action is defined and embodied in section 1572 of the Civil Code. [2] But, to state a common-law action for fraud and deceit, there must be more in the complaint than the bare statement that the defendants made certain false and fraudulent representations upon which, believing the same, the plaintiff entered into the transaction from which he thus asks to be relieved or as to which he seeks any appropriate legal or equitable relief. It must also be charged not only that the defendant knew that the alleged false representations were false and untrue at the time that they were made, but that they were made with the intent to deceive and defraud the plaintiff. This rule in such cases is so well and thoroughly settled that it is axiomatic in the law. Indeed, the rule must necessarily be so, for it is not inconceivable—in fact, it has often been found to be true—that one may honestly and in good faith, and with no intent to deceive or commit thereby a fraud upon another, make statements or representations in regard to a certain matter which are subsequently discovered to be untrue.

It would seem hardly necessary to cite authorities expounding a rule so well settled and understood, but we will nevertheless refer to a few cases directly in point.

In *Hodgkins* v. *Dunham,* 10 Cal. App. 690, [103 Pac. 351], the rule is thus stated, using the language of the syllabus: "The essence of a cause of action for deceit consists in the fact that the false representations were made with intent to deceive, such intent being a necessary element to constitute actual fraud." And the complaint "must also allege that the representations were made with a fraudulent intent and for the purpose of inducing the other party to act on them." (R. C. L. 167.)

In *Heller* v. *Dyerville Mfg. Co.,* 116 Cal. 127, [47 Pac. 1016], it is said: "It will be presumed, in the absence of an averment to the contrary, that the representation was without deceit, and with a belief in its truth." (See, also, *Carlson* v. *Farm Land Co.,* 32 Cal. App. 538, [164 Pac. 344, 348]; *Newman* v. *Smith,* 77 Cal. 23, 26, [18 Pac. 791]; *Feeney* v. *Howard,* 79 Cal. 528, [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984]; *Harding* v. *Robinson,* 175 Cal. 534, [166 Pac. 808]; *Ayers* v. *Southern Pac. R. Co.,* 173 Cal. 74, [L. R. A. 1917F, 949, 159 Pac. 144]; 20 Cyc. 100.)

In *Nash* v. *Rosesteel,* 7 Cal. App. 504, 509, [94 Pac. 850], the action was for damages following from alleged false and fraudulent representations made by the defendant to the plaintiff, whereby the latter was induced to buy certain corporate stock. The court there said: "Appellant insists that this action is brought under the provisions of section 1572 of the Civil Code, which defines actual fraud to consist in: 1. 'The suggestion, as a fact, of that which is not true, by one who does not believe it to be true'; 2. 'The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true, with intent to deceive another party thereto, or to induce him to enter into the contract.' Admitting that the representations set forth in the complaint were false, it is not alleged that defendant did not believe them to be true; nor is there any allegation therein negativing the fact that, if untrue, defendant's information did not warrant him in making the representations. Upon the trial defendant objected to the reception of any evidence upon the ground that there were no actionable issues. We think that the objection should have been sustained."

(See, also, *Gratz* v. *Schuler,* 25 Cal. App. 117, [142 Pac. 899]; *Kilpatrick* v. *Miller,* 55 Colo. 419, [135 Pac. 780]; *Robertson* v. *Frey,* 72 Or. 599, [144 Pac. 128]; *McNulty* v. *Durham,* 63 Colo. 354, [167 Pac. 773].)

Thus, beyond peradventure, it is established that the complaint signally falls far short of stating a common-law case of fraud and deceit as the same is adopted into and defined by section 1572 of our Civil Code. Indeed, the record here discloses that the learned counsel for the plaintiff, during the progress of the trial, repeatedly stated, upon offering certain testimony, to which objection by opposing counsel was made, that the complaint was founded upon section 316 of the Civil Code, and that the basis of the plaintiff's action was the liability fixed by and arising out of said section, and, on one occasion, in the course of the trial, stated to the court that he desired and intended to ask leave to amend the complaint so that it would also state a cause of action against the defendant under section 1572 of the code. But it appears that no such amendment was thereafter or at any time presented or proposed by counsel and the complaint remained in the form of its original draft. In this connection, and parenthetically, it is only fair to the attorney who conducted the trial in behalf of the plaintiff to say that it appears from the record that he did not himself prepare the complaint and was not present in court when the pleadings were settled.

[3] The case, then, stands before us as one which rests entirely on the liability fixed by section 316 of the Civil Code, from which proposition it of necessity follows that any evidence tending to establish in this case any other liability, or, concretely, a case of fraud and deceit under section 1572 of the Civil Code, would be wholly irrelevant to the issue made by the pleadings, and the rulings of the court excluding such evidence were eminently proper. In other words, the complaint is wholly insufficient to warrant proof of oral representations as to the transactions of the corporation of which the defendants were officers bearing with more or less directness upon the subject matter of this action—that is to say (to be more explicit), representations of that character which in and of themselves, independently of those referred to in

section 316, would constitute a sufficient foundation for a cause of action against the defendants.

Thus we are brought to the consideration of the assignments of error based upon the several rulings disallowing certain testimony and the order granting the nonsuit.

Assignments of error Nos. 3, 4, 5, 6, 7, and 35 all involve attacks upon the rulings of the court disallowing testimony of oral representations which it is claimed were made by one of the representatives (Latta) and the defendants Brackett and Covert, the last two, as seen, not having been served with summons, made no appearance. Necessarily, if our construction of the complaint be correct— that is to say, if the cause of action stated in the complaint is, as we hold it to be, founded wholly upon section 316 of the Civil Code or the liability therein established in cases to which said section relates, it follows that any testimony which was offered or might have been offered in proof of oral representations made by the respondents or any of the defendants is and would be entirely incompetent as in proof of the allegations of the complaint. This being so, the result is that the rulings now referred to were eminently proper. [4] Moreover, any oral representations or statements which might have been made by any one of the officers named in the complaint to the plaintiff relative to the affairs of the corporation would not be binding upon the others, unless it were first shown that all the parties, including the nonanswering defendants, Brackett and Covert, had corruptly conspired together and so entered into a mutual understanding that the alleged false representations should by all or any of them be made to the plaintiff with the view of inducing him to buy stock in the corporation, in which case, it may be added, it would also be necessary to show as a prerequisite to the proper introduction of such testimony, that such misrepresentations were made before the accomplishment of the object of the conspiracy or understanding and in furtherance thereof. Some of the testimony which was offered and received of oral representations, but subsequently stricken from the record, appears to have related to conversations the plaintiff had with Brackett and other officers of the corporation after the plaintiff had purchased the stock, and even if we may

assume that it was within the issues to show oral misrepresentations by Brackett and Covert or the respondents, it is obviously true that any statements or representations made by any one of them in the absence of the other confederates (assuming that there was a confederation) after the stock had been purchased by the plaintiff would not be competent as proof against the other conspirators. The rules thus stated are elementary and require the citation of no authorities to confirm the statement thereof. But, as at first declared, there is no issue made by the pleadings as to oral representations or misrepresentations, and such testimony was not, under such circumstances, in any view competent.

The remaining assignments involve exceptions to the rulings disallowing certain testimony offered upon the theory that it tended to establish a case under section 316 of the Civil Code, upon which, as seen, the complaint is based. There are so many of these assignments that it would be impossible, without extending this opinion to an unreasonable length, to give to each of them herein special consideration. In fact, it is not necessary to do so, since all of said assignments involve questions of the same general character and what may be said of one will apply to all. Hence, a general consideration of the points thus urged is all that will be required for the purposes of this opinion.

A preliminary general outline of the situation as it arose at the trial with reference to the evidential features thereof will tend to clarify the discussion to follow.

It will be kept in mind that, as before stated, the defendants, Brackett and Covert, were not served with summons and made no appearance, and that Smith and Renwick, although filing answers, did not appear at the trial.

[5] The plaintiff introduced in evidence certain papers as documents purporting to be statements showing the capitalization, estimated earnings, gross and net, the holdings, mortgage bonds sold, names of officers, correspondents and references of the corporation. Prior to the introduction of these papers or documents, the attorney for the plaintiff was attempting to show that many of the important representations implied from the papers or "records" of the corporation referred to therein were in fact

not true, and that the corporation was in a state of bank-ruptcy at the time he purchased the stock of the corpora-tion and that his investment was, consequently, a financial failure. Objections were interposed by counsel representing the several respondents to that line of inquiry upon the ground that no proper foundation had been laid for such proof. The court sustained the objection, saying that the alleged report or notice or certificate concerning the corporation or its business would first have to be shown, followed by a showing that it was made by an officer of the corporation to the plaintiff and that it was false, before proof of the damage resulting to the plaintiff by reason of the transaction would be permitted. It was then that the papers or documents above referred to were offered and received in evidence.

The order of proof suggested by the trial judge was the natural or logical one, and that it was within the dis-cretion of the trial court to control the order of proof, is a proposition too well settled to be for a moment ques-tioned; and such discretion cannot be interfered with by the reviewing courts unless it is plainly made to appear that it has been abused to the substantial detriment of the party complaining. (*Gordon* v. *Searing,* 8 Cal. 50; *Haw-kins* v. *Kingston,* 1 Cal. Unrep. 413; *Baird* v. *Duane,* 1 Cal. Unrep. 492; *Barkly* v. *Copeland,* 74 Cal. 1, [5 Am. St. Rep. 413, 15 Pac. 307]; *First Nat. Bank* v. *Wolff,* 79 Cal. 69, [21 Pac. 551, 748].)

Typical of the rulings generally under the present head to which the appellant here objects is one which may thus be explained: By the witness Beard, who once held the position of superintendent of construction of the cor-poration, and called as a witness by the plaintiff, it was sought to show that the corporation, because of having no financial means with which to do so, failed to pay for certain work of construction of the roadbed of the corporation's railroad; that the fact of its failure to pay for said construction and of its financial embarrassment generally existed at the time the plaintiff was induced to purchase the stock of the corporation or to exchange cer-tain of his real property for said stock.

Nothing more need be said than is above declared relative to the testimony thus attempted to be brought into the record. —

While the proof offered of the inability of the corporation to meet its financial obligations might have tended to support the proposition that, at the time the plaintiff was given the documents in question, it was practically a bankrupt and as a consequence its stock and bonds of little, if any value, there was not at this stage of the case, nor as we shall later see, at any stage of the case, any proof that the alleged printed reports of the corporation's financial condition and future prospects, upon the faith of which the plaintiff claims to have taken the stock and bonds of the corporation, were issued or authorized to be issued or given out by respondents or any one or more of them, particularly to the plaintiff, and, as already pointed out, it was within the discretion of the trial court to exclude all such testimony as the witness Beard was called upon to give until it was first shown that the respondents or some one or more of them had issued and given to plaintiff or had authorized the issuance or giving out generally of said reports, etc. It must be borne in mind that the action is not against the corporation but against its officers individually, although, of course, by virtue of their official connection with the company.

The foregoing observations are, of course, equally applicable to other rulings disallowing testimony tending to disclose the loss or damage sustained by the plaintiff from his unfortunate investment in the stock of the company. Indeed, what we here say answers all the objections which were made at the trial and are urged here to the action of the court refusing any testimony to be given relative to the transaction whereby plaintiff became the owner of stock of the corporation, all such testimony having been offered in the absence of proof that the respondents had anything to do with the issuance or publication, or the giving to plaintiff, the papers or records or reports purporting to represent the financial condition or the assets and liabilities and the probable prospects of the corporation for a prosperous and profitable business after the completion of the construction and equipment of its railroad.

Some of the other specifications of error involving the court's rulings will be disposed of in considering the order granting a nonsuit, to which proposition attention will now be directed.

The plaintiff was, after considerable discussion between court and counsel, permitted to testify about certain conversations he had with certain of the defendants relative to the business or the affairs of the corporation upon the express condition that such testimony would be stricken out if it did not connect with or tend to sustain the charge that some one or more of the answering defendants "willfully" gave or made, particularly to plaintiff, the alleged false printed official report or records concerning the corporation and its business. Accordingly, he was allowed to testify that early in January, 1912, having previously advertised that he had some country real property which he would exchange for city property, accompanied a Mr. Bennett to the office of the corporation in question and there made inquiry as to the financial status of the corporation and its business, with a view of exchanging his said property for the stock or bonds or both of said corporation. On that occasion the only officers of the corporation he met and talked with were Brackett and Smith. The former was then vice-president and general manager of the company. Immediately negotiations were started between the plaintiff and Brackett for the exchange of the former's property for stock of the corporation. Brackett displayed before the plaintiff the documents or papers purporting to contain a statement or report of the affairs of the corporation, its assets and probable prospects as a business enterprise. These documents or reports were on several loose pieces of paper, and they were attached together, by order of Brackett, by the secretary of the company, Smith (also, as seen, one of the defendants not answering or otherwise making an appearance in the action). The plaintiff testified that Brackett stated to him that the statements contained in the papers were true, and thereupon he (plaintiff) deposited all the papers in his pocket and later "looked and read them over carefully," and then called at the office of the defendant, Dr. Latta, in the city of Stockton, and exhibiting to the doctor the printed papers re-

ceived from Brackett, asked him if they represented the
truth concerning the affairs of the company at that time;
that the doctor replied that they did; that six hundred
thousand dollars of the bonds of the company had been
sold in France; that the company had obtained its right
of way; that the grading was done, etc. The plaintiff testi-
fied to other conversations with Latta, McCormick, and
Renwick, the last named being treasurer of the company.
These conversations were held with each of the parties
named on different occasions and when no one was present
but the plaintiff and the particular director of those last
named so conversed with. Whether all these conversa-
tions occurred before or after the stock was taken by the
plaintiff, it is difficult to determine from the record. It
is plain enough, however, that some of them took place
after the transfer of the stock to plaintiff was effected,
particularly the conversation in which Latta declared to
plaintiff that the failure of the enterprise was due entirely
to the bad management or the insinuated malversation
of Brackett as manager of the company. At any rate,
the substance of the plaintiff's testimony as to these sev-
eral conversations was that in the course thereof the direc-
tors named stated that the financial condition of the com-
pany was such as it was represented to be by the papers
the plaintiff received from Brackett.

Plaintiff was further permitted to testify that, several
days after his first interview with Brackett and after he
had been given the alleged printed reports, etc., of the
affairs of the company, Brackett and Smith called at
his ranch and there attempted to persuade him to take
the stock and bonds in exchange for the real property
which he desired to dispose of in exchange for city prop-
erty, and that subsequently, and after the above-mentioned
conversations with Latta and other directors, he completed
the transaction by taking stock and bonds of the company,
giving in consideration therefor said real property.

Other testimony showing that the road was never com-
pleted, tending to show that six hundred thousand dollars
worth of the bonds of the company were not sold and
that other statements contained in the circulars were
not true, was admitted upon the condition that it would

stand in the event only that it was "connected up," as above suggested.

Thus we have presented in rather a summary manner the testimony received, and we may add that that portion of the testimony to which we have not made special or particular reference herein is of the same general nature as that of which an outline is above given.

On the close of plaintiff's case, the court granted the motion of the defendants to strike all said testimony from the record on the ground that it related solely to conversations with individual defendants occurring severally and in the absence of the other defendants, and on the further ground that, in the main, its effect was merely to establish oral representations by the defendants between whom and the plaintiff the conversations to which it related occurred, and had no tendency to establish the charge laid in the complaint and based upon section 316 of the Civil Code. The granting of said motion was followed by a motion for a nonsuit, which, as seen, was also granted.

It is obviously true that if the order granting the motion eliminating from the record all the testimony of which we have above presented a brief conspectus was well grounded, it follows that the order allowing the nonsuit was proper, since there was left in the record, after the motion striking out was granted, no testimony whatever to support the averments of the complaint.

It will be observed from the statement herein of the testimony that there is not a line or word of the evidence tending in the slightest degree to connect the answering defendants with the issuance or giving out of the circulars or papers referred to in the complaint. It is true that their names, with those of the other officers of the company, are *printed* in one of the printed documents given to the plaintiff by Brackett. If the action was one against the corporation or if the names of these respondents were subscribed to said documents in their own proper signatures, we can now think of no sound reason why, as to that particular document, it could not justly be held that thus there was made out a *prima facie* showing, sufficient at least to put them upon their defense, that they authorized the issuance and publication of the paper or report, assuming, of course, that proof of the falsity of the state-

ments it contained were also made. But, for all that appears to the contrary from the document itself or any of the other testimony which was conditionally received, Brackett himself might alone have been responsible for the preparation, the printing, and the publication of the document. These respondents and not the corporation are, as before stated and as is obvious from the nature of the action, proceeded against as individuals, against whom it is sought by this action to secure an individual judgment, which, as the statute declares, may be either joint or several, and to establish a case against them under section 316, it is requisite that by competent testimony they should be shown actually to have been parties to the issuance and publication of the documents in question, and, to that end, that they actually subscribed their names to the document in which their printed names as officers of the corporation appear. There was no such testimony offered.

The plaintiff stated that the only officers of the company that had anything to do with bringing to his attention the circulars were Brackett and Smith. Of course, as we have before shown, the other defendants could not be bound by what Brackett and Smith did, unless it were shown that their acts—that is, the issuance of the circulars and the presentation of those documents to plaintiff by them—were the result of a preconcerted arrangement and design by and between Brackett, Smith, and the other defendants to cause the issuance of said circulars, etc. There was no testimony tending to show any such confederation between Brackett, Smith, and the other defendants.

The testimony of conversations between the plaintiff and the defendant Latta does not show that the latter had anything to do with the issuance or publication of the circulars. It merely shows that the plaintiff himself first called Latta's attention to the circulars, the former, as seen, having the same in his possession on the several occasions he conversed with Latta. There being no showing that the defendants were in a prearranged league with each other to issue and publish the documents in question, the representations or statements or acts of Latta could in no event bind the other defendants; but, the very most that can be said of the statements of Latta in said conversations is that they involved, if anything at all, oral representa-

tions of the business affairs and financial condition of the corporation, and, as we hold herein, such representations are wholly foreign to the issues made by the pleadings, and, therefore, testimony disclosing the statements and representations of Latta concerning the corporation and its financial condition is immaterial and out of place in this record. And what is here said applies with equal pertinency to the testimony given by plaintiff of conversations with Renwick of similar import to that of the conversations with Latta.

It thus appearing that the testimony given by the plaintiff failed to connect any of the answering defendants with the acts of Brackett and Smith in issuing and giving to plaintiff the circulars in question (assuming, but not deciding, that said acts are within the ban of section 316 of the Civil Code), and it thus further being shown that said testimony related only to oral representations made by the directors with whom plaintiff had the conversations to which said testimony related, it follows that there was but one course left for the trial court to take on the motion to strike out the testimony, and that was to grant the motion.

It is very probable, if we may rely upon certain statements made by the defendant Latta concerning the defendant Brackett's management of the company's affairs, that the plaintiff was defrauded of his property through the transaction giving rise to this controversy, and, of course, it is a matter greatly to be deprecated that he has not thus far succeeded in having the wrong inflicted upon him, if any, redressed, but his attempt in this action to secure relief was due, not to his attorney, who, it clearly appears, employed every legitimate effort to support the action, but to the want of proof to establish a case under section 316 of the Civil Code upon which his action was founded.

The judgment is affirmed.

Prewett, P. J., pro tem., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1921, and the following opinion then rendered thereon:

THE COURT.—It should be said in denying the application for a hearing in this court after decision by the district court of appeal for the third appellate district, that respondents contend in their answer to the application that the district court of appeal opinion, in stating that there was evidence that appellant brought to defendant Latta's knowledge or observation any of the circulars or notices, is not sustained by the record, and our examination of the record satisfies us that this contention is well based. Were there such evidence there would be grave doubt of the correctness of the conclusion in so far as defendant Latta is concerned.

The application for a hearing in this court is denied.

All the Justices, except Olney, J., and Sloane, J., concurred.